IN the UNITED STATES DISTRICT COURT
for The NORTHERN DISTRICT OF New York

---

A KO. K Burrell, Individuals, as on the behalf For
Others and Similierly Situated Plaintiffs

V.

Complaint

E. Bell

D. Bradford

T. Zer

M. Rushford

K. langlais

K. Matott

G. King  individually and in
their official Capacity

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUL 0 1 2022
AT_____ O'CLOCK_____
John M. Domurad. Clerk - Syracuse

9:22-cv-701

---

1. Plaintiff and (any similary other person),
Pro Se ; for their Complain as
Follows:
        II Parties, Jurisdiction and
                        Venue

2. Plaintiff, File this Civil action authorized by
42 USC 1983, to dress the deprivation, under
the color of law of the Rights Secured
by the us. Constitution of the United States.
        (PG 10)

This court has Jurisdiction under 28 USC 1331, 13 43 (A) (3v seeks decleatory relief Pursuant to 28 USC 2701) 2022. Plaintiff(s) Claim For injuctive relief are authorized by 28 USC 2283, 2284 and Rule 65 of federal Rules of civil Procedure.

2.) The Northern District of New York is an appropriate venue under 28 USC 1341 (b)(2) because it is where the event(s) giving rise to this Claim Occured.

3. Plaintiff Ahto Burrell, was at all times mentioned herein, a Prisoner in the custody of New York State Department of correctional Services and Community supervision, (hereinafter Doccs) at the Clinton correctional facility (hereinafter Doccs, located at P.O. Box 2001, Dannemora, New York 12929.

(A) Plaintiff (A) bring this action as a Class Action Persuant to Rule 23 (b) (2) and Rule 256

(3) Of Federal Rule of. civil Procedure.

(B) the Class Consists of all Persons incarcerated at CCF. 2022-2022, deteined by Doccs

(pgm)

Who were Subjected to atypical, Significant, Unsanitary, high toxic, Covid-19 Infections, and death, from being exposed to Covid-19, and NO effort from Doc's to Clean, Sanitize, Provide Safer methods of communications, eating, Programs, Recreation, the Deliberate Indifference of the eighth, AND Fourteenth, amendment Pursuant to the U.S. Constitution.

(c) the Class is So numerous that Joinder of all persons is impractible. Plantiff(s) are informed and believe that at least most of all persons in the custody of CCF. and were Subjected to the deliberate indifference OF protection from the infection of Covid 19. Based upon that Information, Plaintiff(s) believe that the Class Probably numbers well over (20) twenty persons.

(d) Plaintiff will Fairly and adequately protect the intrest of all class members as they are member of the Class and their claims are atypical of the Claims of all Class members. each of the Plaintiff(s) is incensed at the treatment accorded the class members and will aggressively - Pursue the intrests of the entire class. Plaintiffs intrest of the entire Class. Plaintiff(s) intrest of IN Obtaining monetery damages for violations OF Constitutional Rights and Privilages are Consistent with and not antagonistic to those of any person within the Class.

(Pg 3)

(E) the common Questions OF law and infaction includes

(I) Wheather defendent(s) had a policy and practice to deny Plaintiff(s) Protection from the infection, death, and exposure of Covid-19,

(II) Wheather the Supervisory defendent(s) had knowledge of the conduct alleged herein.

(III) Wheather the conduct alleged herein is in violation of the feurteenth, eighth, Amendents.

(IV) Wheather Plaintiff(s) and the members of the Plaintiff class are entitled to an award of Compensatory or Punitive damages.

(F) The wrongful conduct alleged herein has been conducted generally upon all members of the Plaintiff class in that CCF, exposure, infection to death of Covid 19 due to the refusal to Provide Protection to Plaintiff(s)

(g) The Common questions of fact to law Predominate over questions affecting only individual Class members.

(h) A class action is superior to offer available methods for the fair to efficient adjudication of the Controversy in that; (i) A multiplicity of Suits with consequent burden on the courts to defendants should be avoided, j (ii) It would be virtually Impossible for all class members to intervene as Parties - Plaintiff in this action, (iii) Upon adjudiciation of defendant(s) liability claims of the class members can be determined by this Court.

(Pg 13)

II, Defendant(s) Herein:

4. Anthony Amucci, is the Commissioner of Doccs, & is legally reponsible for the welfare of Plaintiff(s),;

5. Defendant(s) Scott Kelly, is the Deputy Superintendent of Doccs, & is legally responsible for the welfare of Plaintiff(s);

6. Defendant(s) Earl Bell, was a Superintendent of CCF, & was responsible for welfare of Plaintiff(s);

7. Defendant McIntosh is the Superintendent of CCF, & was responsible for the welfare of Plaintiff(s);

8. Defendant Rushford, is the Nurse Administrator of CCF, & is responsible for the welfare of Plaintiff(s);

9. Defendant JPAy, is a Private entity, in contract with Doccs;

10. Defendant Securus, is a Private entity, in contract with Doccs;

11. Defendant CorCraft, is a Private entity, in contract with Doccs, & are responsible for the welfare of Plaintiffs;

12. Defendant Mc leary is a C.O. at CCF, & is responsible for the welfare of Plaintiffs;

13. Defedas Tucker is a C.O. at CCF; & is responsible for the welfare of Plain tiffs;

14. Defedant Mating is a C.o. at CCF, & is responsible for the welfare of Plain tiff(s)

15. Deterdant Cook, is a C.o. at CCF, & is responsible for the welfare of Plaintiff(s);

16. Defendant is a C.O. (lovanway) at CCF, & is responsible for the welfare of Plaintiff(s);

17. Defendant Portious is a C.O. at CCF; & is responsible for the welfare of Plaintiff(s);

(Pg 14)

18.) i. Bradford, is the First Deputy Superintendent of CCF; and was is legally responsible for Prisoners

19.) T. Zernaik, is the Deputy Superintendent of Security of CCF, and is legally responsible for Prisoners

20.) T. Le Clair, is the Deputy Superintendent of Administration of CCF; and is legally responsible for Prisoners. Defendant Rivers, is a C.O. at CCF; & is responsible for the welfare of Plaintiff(s)

21.) K. Langlais, is the Assistant Deputy Superintendent of mental Health of CCF; and is legally responsible for Prisoners. Defendant Harrigan is Deputy of Health at CCF; & is legally responsible for the welfare of Plain Aff.

22.) K. Matott, is the Captain of CCF; and is legally responsible for Prisoners.

23.) C. King, is the Sergeant of CCF; and is legally responsible for Prisoners.

24.) Defendant Lt. Perkin, was a lieutenant at CCF, & was legally responsible for Prisoners.

25.) Defendant Sgt. Mason, was & is a sergeant at CCF; & was legally responsible for Prisoners.

26.) Defendant Wilson is a C.O. at CCF; & was legally responsible for the welfare of Plaintiffs,

27.) Defendant Whitehurst is a C.O. at CCF; & was legally responsible for the welfare of Plaintiff(s).

28.) Defendant KASCO, LLC is a private entity in contract with DOCCS,

(Pg 6 5)

29. The Plaintiff(s) Burrell was Confined to CCF, during a International Pandemic, from a virus that is infectious, dubbed "Corona or Covid-19" (hereinafter Covid-19), On March 23, 2020, the United States Center for Disease Control & Prevention (hereinafter CDC) Sat a Benchmark Standard on how to efficiently Combat Covid-19 in a "Interim Guidance on Magenant of Covid-19" (see Exhibit A).

30. On or about April 03, 2020, Attorney General of the United States William Barr, invoked the authority granted to him under CARES Act & Directed all U.S. Attorneys & heads of Component of Department of Justice to "Consider not Seeking detention for defendant(s) with Serious Crimes who Present little risk Of Flight, are not a Crimes who Present little risk of Flight, are not a threat to the Public, who are vulnerable to Covid 19."

The memo directs Prosecutor(s) to apply the same analy- 5.3 When litigating motions filed by detained Deft endants seeking release because of the Pandemic.

31. The memo intructs the Bureau of Prison with a Due Process requirement(s), for use of Statutory authorities to grant home Confinement for certain at risk inmates to reduce the overall Prison Population those requirements here:(1) Age & Vulnerability; (2) security level of facility; (3) inmate conduct; (4) inmate score under PATTERN BOPS alogrithm;(5) inmate severity (6) Crimes of Conviction.

(Pg. 16)

32. The federal government gave the necessary powers to maintain a democracy under a Pandemic 2 ensures the right to [to] inmate(s) with the CARES Act, to the CDC Interim Guidance or management of Covid-19.

33. Which Empowered Prisoners Eighth Amendment Rights, to be free from Cruel & Unusual Punishment, Conditions of Confinement with CDC Guideline(s) focuses on "Correctional-Preparedness, Prevention, & Management"; (1) Operational & Communication(s) Preparations for Covid-19; (2) Enhanced Cleaning / Disinfecting & hygiene Practices; (3) Social Distancing Strategies to increase space between individual(s) in the facility. (4) How to limit transmission from visitors, (5) Infection Control, including recommended, Personal Protective Equipment (hereinafter PPE), & potential alternatives during PPE Shortages; (6) Verbal Screening & temperature Check Protocols for incoming incarcerated/detained individual(s) staff, & visitor(s); (7) Medical isolation of confirmed Cases & quarantine of contacts, including for cohering where individual spaces are limited; (8) Health Care evaluation for suspected Cases including testing for Covid-19; (9) Clinical Care for confirmed & suspected Cases; & (10) Consideration for Persons at higher risk of severe disease Covid-19.

34. The World Health Organization (hereinafter WHO), is the leading Public Health org. to take a position on reducing Populations to ward off the spread of Covid-19 in Penal settings.

35. In a joint effort the following advocacy groups, the United States office of Drugs & Crime; Joint United Nations Programs & the office of the high Commissioner for Human Rights, urging Political leaders around the world to limit incarceration to the greatest extent Possible.

36. On March 21, 2020, the unreasonable exposure to the Covid-19 virus to Plaintiff(s): First Objectively, the danger to which Plaintiff(s) are exposed is one that Society deems unacceptable, & Second, that Subjectively, the defendant(s) were, & continue to be deliberately indifferent to the danger to which Plaintiff(s) were Subjected.

37. The deadly threat of Covid-19 to the closed Penal environment meets the Objective Eighth Amendment(s) Standard, So now the question as law is not whether the danger existed, but instead, whether Defendant(s) Armed(?), & Ball which was well known as of march of 2020.

38. Many Courts have used the CDC guideline(s), as the benchmark. Under this approach, the failure to utilize the CDC guidelines is Presumptively deliberate indifference, many courts, have take to accept that the guidelines are "authoratative" evidence of measure that must be take to contain the virus spread,

(Pg. 18)

39. Science demonstrates that if the guidelines are not followed then an inmate "will face a substantial risk of serious harm in prison from Covid-19."

40. Plaintiff(s) Burrell were housed under CCF, Defendant Bell, as superintendent, Bell made Plaintiff(s) aware that the visitation & other programs will be postponed due to the infectious disease.

41. The Plaintiff(s) Burrell invoked by the Protection of Cruel & Unusal Punishment, from contracting Covid-19. The involuntary exposure of second hand tabacco was actionable under the Eight Amendmat, which Protects, a Prisoner from any risk that is "so grave that it violates contemporary Standards of decency to exposure anyon unwillingly to such risk.

42. Exposure to a contagious disease, beyond what is experiecend in the Cnilian Population, violates contemporary Standards of decency & is Sufficiently serious condition trigger Eight Amendment Protection.

43. Defedant Bell had to actuonal Knowledge of the threat of Covid-19 Virus, how contagious as it was, who informed Plaintiff(s). After being turnd Knowledgeable of the Covid-19, infectiourness, ruty Bell failed to take any meaningful Preventive measure to Protect Plaintiff(s) Eighth Amendment rights by not adhering to the CDC guidelines, & using Preventative measures to alleviate the threat of the spread of Covid-19 by failing to issue any memorandums to Plaintiff(s) advocating CDC interim.

(Pg. 19)

44. Defendant Scott Kelly, is the first Deputy Superintendent Director of Special Operations & Emergency management for Doccs. Defendant Scott, issued a Directive to Defendant Bell, on how to modify the Corrections of confinement to maintain a democracy, & Protect Staff & Prisoner(s) aswell. (See Exhibit B)

45. This Directive was overly vague, to not tailored for CCF, which a unique facility with over 1,500 People within the facility, on the average day. Defendant Kelly, never trained nor supervised Bell; & Anucci, on the Directive he issued for the mangement for the emergency Covid-19 out break.

46. Defendant Bell is not a Director of Special Operations for Doccs, so he would require training, from Scott Kelly, to efficiently to Protect Plaintiff(s) Bunell from the Covid-19 virus.

47. Defendant kelly was aware of the CorCraft disinfectant, that was recommended by (WHO), but only Provided to a selective three Facilities. Defendant was aware of the effect the CorCraft would have on combating Covid, Defendant Kelly was aware that 5% 842 inmate across Doccs. (See Exhibit B). Kelly believed Defendant(s) Anucci, & Bell was and taken Covid-19 measures to Combat Covid-19 that "... are in line with CDC... recommendations for Correctional facilities in the United States". Defendant (s) Kelly, was under this assumption as of December 14, 2020. (See Exhibit B).

48. Defendant Kelly, believed, Defendants, Annucci, Bell, TPay &
Seluns, were in line with the CDC guidelines to re-
vise existing Flu Pademic Protocols for Covid-19...
Clearly Communicate to inmates "What they must do to
Protect themselves... guidelines advise Prisons... to Continue
disinfect areas where inmates... Congregate... The CDC also
Specifics that social distancing Protocols be Put in place so
that, to the largest extent Possible, Prisoners Can main-
tain Six Feet of distance from one another, To achieve
this... Prisons... increase Space between individuals hol-
lding Cells.. Stagger meals.. limit group activity"

49. Bell, Annucci, Seluns, & TPay, caused & incentived a spike in
Covid-19, Plaintiff(s) Burrell who could not effors tele Comm-
unication or email(s), was now afforded a free Call, & that
Compelled these Prisoners to enter the North Yard area of
CCF; & use a Containment Phone, that was not Sterilizes.
& be less than Six feet from another Prisoner, & this was
indecent exposure, infection of Covid 19. (see Exhibit B)

50. Plaintiff(s) Contracted the virus due to never having a idea
of Using the Phone, the Defendants Negligence in Providing
free call(s) & emails with no due diligence of CDC
Safety guidelines, or CDC guidelines (Safety).

(Pg. 21)

56. Kelly referred to "Historic.., successfully managed infectious outbreaks". In 1933, a AIDS outbreak resulted in a filing of 1983, (See LaRocca v. Dalsheim 180 misc. 2d 697) B a Hepitic-C. Outbreak in 2006 235 FRD 40. Both of these outbreaks occurred over 10 yers in Docs, the Defendant(S) if they were trained they required training from the expertise of Kelly, to effectively Combat Covid-19. To just instruct Anucci/Bell, to "revise" Correction Law 141, was Pointless & moot, the Defendant(s) required training B Supervision. See Exhibit B).

52. This Point is made, Kelly, stated in his affidavit "inmates... are permitted to use their State issued handkichiefs as additional face covering (See Exhibit B). Kelly, had trained B Supervise Anucci/ß Bell in the adoption of his Covid-19 Plan, then Plaintiffs/ Burrell would not have been issued a mask, for altered State items, o being Replacement". (See Exhibit C)

53. Kelly never trained Anucci, Bell, that Plaintiffs, Burrell can use a handkerchief(S) because Bell refused to Provide PPE. None of Plaintiffs/ Burrell mbn were reversed B expunged from their disciplinary Record, Plaintiffs/ suffered not limited to Jo days keeplock, Loss of dec; Loss of Pkg; Loss of Commissary, Loss of Tablet, B Property.

(Pg 22)

54. Due to Kelly failure to train Bell & tucker, mcleary, Rivers, Coveway, Portious Wilson, White hurst, T. Lashway, firm Mertin, Cook, mcDonald, Sgt. Masaryk, Durkin Bell & McIntosh. As well as JPAY, Amucci, & Securus, was Gross negligence & deliberate Indifference to the CISC & Defendant Kelly tablet expansion offering(s) telecommunication(s) application on the JPAY(S) Tablet & the video conference on the Kiosk, caused an atypical & significant hardship on Plaintiff(s).

55. Had Amucci, Bell, Securus, & JPAY, implemented the video-chat via the video camera located on the JPAY Kiosk, that(s) located in every living quarter in clf, that Defendant(s) Bell had a system of use (see Exhibit &). The infection spike that occurred after august of 2020 would have been prevented.

56. There was safer alternative for Plaintiff(s) & there family member(s) to see & speak to each other This was an agreement to in the request for Proposal bid application submitted by JPAY, who is not fulfilling the full terms of the conference contract with DOCCS to provide video-chat on the kiosk.

57. Once this spike occurred Bell, ordered the facility to suspend visitor, & On December 16, 2020, Bell reopened CCF, to over 200 Plaintiff(s) were infected. It is obvious that visitors of Plaintiff(s) would have been willing to pay for the video chat service they as they committed to CCF.

(Pg. 23)

58. Kelly ".. Historically Doccs has successfully manages infectious outbreaks.. Docls has a comprehensive Pandemic Flu Protocol that has been modified for Covid-19. (See Exhibit B).
The CDC also ordered " revise existing Flu Pandemic Protocols for Covid-19". Defendant Bell was never given or Provided Plaintiff(S) with Flu Protocol. Nor did Kelly or Annucci provide training to Defendants Bell, Tucker, McCleary, Rivers, Cavaway, Portious, Wilson, Whitehurst, T. Loshway, Finn, Martin Cook, McDonald, Sgt Mason, Lt. Durkin, Bell & McIntosh were not trained.

59. Correction Law 141 "Contagious Disease In Facility"; this is the statue governing Doccs Pre-existing Flu Pademic Plan, Kelly referred Bell to adopt, which states "In any case in Contagious disease.. breakout... Among the In Carcerated individuals.. the Commissioner.. may cause Confinement in such facility ~ Shall receive all necessary Care & medical assistance, Shall be returned as soon as may be feasible to the facility from which they were taken". This is the only formal Idea that Defendant(S) had of how to combat, Stop & Prevent Plaintiff(S) from an Infection, wrongful death, & illness from Covid-19.

60. Bell, Tucker, McCleary, Rivers, Cavaway, Portious, Wilson, Whitehurst, T. Losway, Finn, Martin, Cook, Sgt Mason, & Lt. Durkin disregarded the "Social Distancing Regulations," issued by Doccs, CDC, and Preceding vice President Mike Pence. The Federal Government, New York State Governor Adrea Couma.

(Pg. 24)

61. On or about December 15, 2020, Kelly ordered Bell to implement the "Covid-19. Asymptomatic Surviellance testing Plan". Bell refused, the Policy created, was a racial bias ness that caused Plaintiff(s) Burrell to be unlawfully confined repeatively. Kelly Policy".. too test a random selection of individuals"

This Policy required that " ... Person is maintained in isolation for a minimum of 14 Days or until his symptoms are gone & he has to fever for 72 hrs. with out the aid of medicine". Bell, Rushford, T. Zenisk, devised a Plan too ".. Deny the Plaintiff(s) Temperture checks so they can create (f;i)-Block, to the Infirmry Poste, open to get overtine. (See Exhibit B)

62. Defendant(s) Mclury, Tucker, Martin, Cook, Laughway, Portious, eddy fast the Save Plaintiff(s). Transfering them from gen-luston to occur after a verbal exchage (f;i) Infirmry). This is a Vance, these Defendant(s) will state "oh, you're grievaned this, ther going to quarantine asshole". Plaintiff(s) was brought to the Infirmry, (f;j.b). In general Population, Plaintiff(s) relied upon Commissary & Pkgs For food Due to quarantine, Plaintiff(s) Burrell relied on trays, cups, spoons, to fots were dirty, Plaintiff(s) Burrell here not given any Sanitation no symptoms or had a fever, Plaintiff(s) remained there for 14 Days with no shower, soap, They to food, resulting in over Forty (40) Pounds and mental anguish. (See Exhibit E).

(Pg. 25)

63. These Parties, Ordered the Private Citizens of the Free Society to Socially distant as much as possibly & to Prevent as much social encounter as much as can Possible be made only worker(s) deemed essential was required to Work & Docs Commissioner Annucci ordered all visitation to be Post Poned Until the virus had dissipated.

64. Annucci, Securs, JPAy, & Bell, Secured via Request for Proposal to Provide telecommunications & service(s) via JPAy (5) Tablet to the general Population, had a Contractual agreement to provide telecommunication Under Correction law(s) requiring Phone services, to communicate with families & friends from the Facility, Annucci Provided a memo to Bell that he was able to have Defendant(s), JPAy & Securus additional tablet service(s), & Phone, none of these services What was ordered, it was an entry level attempt JPAy & Securus Provided two (2) free Calls, games, & emails. Nothing to Slow the spread or In-fection of Covid-19. (See Exhibit F.).

65. New York Finance Law Section 163; Purchasing Services & Commodities, Specification; description of the Physical Characteristic; the nature of a Commodity description of work to be Performed, the Service, Products to be be Provided. JPAy offer(s) Pla- in titr(s) JPAy (5) Tablet & a Kiosk & Station in every living quarter of Docs.

(Pg. 26)

66. The Services are email, music, videos, Photographs, there Services that was available, but Annucci, Bell, JPAy, & scures refused, & essentially were deliberately to different to the safer alternative(s) of Communication & visitation. The operating Principles of New York State Anucces law 163, states "The objective of a state agency's mission while Protecting the interest(s) of the state of New York & be its tax Payer & Promoting fairness in Contracting with the business Communities." (5) Determination of needs (a)(b) may request, service or a Particular services having utility (e.g. wi-fi),

67. The basis for awarding Contracts for services to the offer Which optimizes, quality, Cost & efficiency among responsive & responsible offers; such basis shall reflect where possible

68. Objective & quantible analysis.

Metron Annucci, Bell, securs; & JPAy, were all aware of the JPAy (5) Tablet device & its capabilities of the telecomunication applica- tion, that was downloadable (see Exhibit G), that was g.H. ordes to Plaintiffs) The refusal to allow Plaintiffs(s) to download the JPAy (5) Tablet telecomunication application & the video-communication app on the kiosk was grossly negligent in combating the spread of Covid-19, Protection & Contamination of Covid-19 for CCF, & the Protection of the virus for Plaintiff(s) Bunnell,

(pg.27)

69. The teleCommunication app on the JPAY (5) Tablet that Plaintiff(s) Burrell possession b the video-Chat on the Kiosk, is the Safest method for Plaintiff(s) Burrell to Communicate with there friends & families. The Plaintiff(s) been afforded this logical Safety Precaution, The Covid 19 virus would not have been able to spread & infect inmates. The Defenda+(s) do not even give a Perological Justification into the legitimacy to deny these services,

70. This inter Preprestation of these applications features to Plaintiff(s) Burrell & CCF, would have Created a safer social distancing environment, that was realistic & effective. Plaintiff(s) Burrell would not have to put thaghre safety at risk of being infected of Covid-19, by not being a social distace while using the Phony is a Sterilized Phone, that is Contaminated.

71. Amucci, ordered Bell, the "JPAY; secures, to "exPad offerings to blue Program". (See Exhibit B). The CDC also ordered alternative methods (See exhibit A) of communications, Bell deemed the civilian staff in the Correspondence office as non-essential, so writing letters were not available to plaintiff(s), the email method on the JPAY tablet, requires Plaintiff(s) to Plug the tablet to the Facility Kiosk, & Plaintiff(s) would be afforded this Privileged if they were lucky, there are 42 inmates on each gallery, & the Kiosk access was every other Day (see exhibit B), and there was no visit(s) (see exhibit B),

(Pg. 28)

72. The neglect, & the Cause of the spread of Covid-19 was exacerbated by Annucci, Bell, TPAy, Sclurs, & McIntosh, by turing the CCF; Phone area into a Super Spreader There was no way for Plaintiff(s) to avoid all Social en- Control with infected & asymptomatic inmates of the Covid-19 virus.

73. These Defendant(s) failure to utilize the TPAy tele Communi- Cation app, & video Conterence, as a deterrent to reduce the spread of Covid 19, by failing to implement these features as a "aggressive measures," & allow the CCF; General Pop- U(ation(Plaintiffs) to Socialize in the rec area, not socially distant, not wearing any PPE, & be Therein Place there less than six feet apart (See Exhibit 61).

74. These Defendant(s) Annucci, Bell, McIntosh, TPAy, & Sclurs Caused the spread & Contraction of Covid-19 at CCF, by requiring Plaintiff(s) with Pre-Pandemic methods of Communication & visitation(s) as they only option. The Phones are not Sterilized, so inmates who carry the virus may use the Phone, & Plaintiff(s) Burnell will use the Phone right after the infected inmate. These Phones aren't being Sterilized after every use this would be Cumbersome to Bell & Annucci.

(Pg.29)

75. The Defendant(s), efforts to manipulate Plaintiff(s) Burrell into taking the vaccine stating "Clinton has not received or administered any Johnson & Johnson" vaccine(covid-19)." Had Plaintiff(s) Burrell taken the vaccine that the CIX had ordered to stop being used, Plaintiff(s) Burrell ran a risk of vaccine side affects, (see Exhibit R).

76. Bell failed to oblige to the hygenic safety order, Bell has an order to clean the CCF; up to pass a inspection, Anucci Conduct(s) bi-quarterly review of the CCF, Pursuant to N.Y.S DOCCS; NYCRR (7); DIR. 4913; B 4300.

77. Anucci, Bell, & Kelly, was ordered to implement several other measures (see Exhibit A; & B), (1) Mandating all staff to wear face mask while on duty; (2) Supplying inmate(s) with mask; (3) supplying inmates subject to isolation & quarantine with mask; (4) Temporarily suspending all visitation within the facilities; (5) working with Tablet Vendor; (6) Expanding offering to inmate(s)' general Population; (7) Requiring non-essential staff to stay home; (8) Displaying Posters with information on Covid-19 & safety tips throughout DOCCS; (9) Issuing enhanced/sanitizing Consistent with CDC; (10) Issuing hand Sanitizer to all facilities for staff & inmates to use; (11) Enlisting CorCraft, an entity of DOCCS to Develop & bottle a 75% Isopropyl Alchol based formula as recommended by the (WHO) at (3) facilities Great Meadow, Albany & Shawangunk.

78. Anucci, Bell was required to ensure that these requirements were met, as being a responsible & Vigilant Custodian

(Pg. 31)

79. The Law Library is another neglected area for protection as CCF, by Bell, & Annucci, refusal to expand "Tablet Offerings". The Defendant Securus, Provides a Tablet Green in Color with the Westlaw Thomas Reuters.

The Law Library IS not sanitize, & is overseen by DSP King, Wilson, & Whitehurst to Bell. The equipment is refused to be sanitice by the overseer(s) after use, sene dynanic of transmitting the virus as the Phone.

80. Since the CDC Interim Guidelines, up until october 5Pm, (see Exhibit H), won at least (12) hrs. a day, after (3) day of wear these masks are in effective in combating Covid-19, in spreading the Contraction, furthermore the CDC rendered "multi-layered mask", as the new standard to pre-vent the contracting of Covid 19. Bell, & Annucci, allowed Doccs employee(s) to utilize there Personal CDC Criterion mask, but refused to Allow Plaintiff(s) to receive PPE via Packroom Directive 4911. (see Exhibit F).

81. Defendant(s) are responsible for at least one death, of a Plaintiff, & the death of all Plaintiff(s), due to there negligence & deliberateness of indifference to the Protection of Covid-19. 82, Bell, Annucci, & Ashford still provided the "Johnson & Johnson" Vaccine. On or about April 10, 2021, when the CDC ordered the stop of "Johnson & Johnson" Vaccines because it was causing deaths, & blood clots in people, so Plaintiff(s) were deathly afraid of the side affects. (see Exhibit I,).

(Pg. 30)

§ 3.)

83.) Defendant E. Bell Failed to oblige to the hygenic Safety order. Bell has an order to clean up the facility up to inspection. Anthony Annucci Conducts bi-quarterly review of the CCF, Pursuant to NYSDOCCS; NYCRR Title 7; Directive 4912; and 4300,

84.) DOCCS was ordered to implement Several other measures (see Exhibit(s)A) 1.) Mandating all staff to wear face masks while on duty; 2.) Supplying all incarcerated individuals with surgical-type masks; 3.) Supplying incarcerated individuals Subject to isolation and quarantine with surgical type masks; 4.) Temporarily suspending all visitations within the facilities; 5.) working with Tablet vendor; 6.) Expanding offering to the incarcerated population through the general population Tablet Program; 7.) Requiring non-essential Staff to stay home; 8.) Displaying Posters with information on Covid-19 and Safety tips throughout DOCCS Facilities) 8.) Regularly showing a video to the population and staff on Proper handwashing; 9.) Issuing enhanced/Sanitizing measures & disinfecting procedures for office Surfaces & devices Consistent with CDC; 10.) Issuing hand sanitizer to all facilities for staff and the incarcerated population to use. 11.) Enlisting Corcraft an entity of DOCCS to develop and bottle a 75% ISO propyl Alchol based formula as recommended by the WHO at Three facilities Great meadow, Shawagunk, and Albion.

85.) Bell, was required to ensure that these requirements were met, as being a responsible & a vigilant Custodian

(23)(Pg.30)

86.) E. Bell issued a order to the CCF, Plaintiff(s), that was a policy, that was deliberately indifferent to the Sanitation needed to protect Plaintiff(s) from infection from the contangious Covid-19 virus, (see Exhibit-L)

87. 87.) At the point where the virus began to infect CCF; Staff & Plaintiff(s), E. Bell never. Provided plaintiff(s) with PPE, to meet DOCS or CDC Standards. There was only hand sanitizer at a select few locations, none was readily accessible to Plaintiff(s). There was a total of 12 hand Sanitizer dispensers in a populate of 1,400 Prisoners, and another 200 DOCS Staffer

88. 88.) E. Bell, C.O. Tucker, C.O. McCleary, Finn, Rivers, Lavarway, Portess; Wilson, Whitehurst, T. Cashway, Finn, Martin, Sgt. Moson, Lt. Durkin, Cook, and McDonald,

89. Defendant(s) under bell instructions issued misbehaivor reports to Plaintiff(s) for making make shift PPE with facility handkerchiefs to protect themselves from the virus, because he refused to issue them to Plaintiff(s). (See Exhibit C, after the DOCCS and CDC order. (See Exhibit(s) A).

24) (Pg. 33)

90. ~~gray~~ ~~stars~~ E. Bell refused to provide enhanced cleaning or any type of disinfecting, or hygiene Practices. Bell refused to provide tutorial to plaintiff(s), Bell ordered the CCF; cleaning staff/prisoner's enrolled in the Porter (e.g. Janitorial Job duties) to "use a minimal amount of water" (see Exhibit ~~W~~ N) in defiance of the CDC "ENHANCED CLEANING".

91. ~~(Ex.)~~ ~~stars~~ Any disinfecting solution, bleach etc; requires a certain amount of water, to activate and to be effective in disfrubition and be safely applied, to be effective in killing any type of contamination, Bell ordered the CCF, cleaning staff to clean using a minimal amount of water, exposing plaintiff(s) to the virus, by defying Doccs and CDC guidelines using the standardized "Enhanced Cleaning" methods,

92. Enhanced Cleaning/disinfecting and hygiene Practices; infection Control, including recommended Personal PPE. and potential alternatives during PPE Shortages. The guidelines call for posting signs communicating Covid 19 and Providing hand washing instructions. (see Exhibit A).

(25) (Pg. 34)

93.)
880 E. Bell and Defendants Cor Craft Inc., ordered the CCF, Prisoner(s) Plaintiff(s) who were enrolled in the Tailor Stop Program, to manufacture mask, for the general Public, of the State of New York.

94.) 8849 Bell and CorCraft denied Plaintiff(s) to Produce mask for themselves or the CCF Population. These Plaintiffs were Stationed less than Six Feet apart, Violating Social distancing requirements, Several Plaintiff(s) were diagnosed with the virus, a recieving the ruslts coming back days after testing, Causing the entire tailor Stop to be a Super Spreader area. (See Exhibit N)

95.) 8849 The Defendants refused to Provide Clinton with bottles of 75% IsoPropyl Alchol-based formulara recommended by the (WHD). CorCraft, was deliberately indifferent to the plaintiff(s) health tre ordered the plaintiff(s) to work in the Tailor Stop Program, when Programs were ordered closed by Annucci Docs Commissioner (see Exhibit A), to manufacture PPE for the general public, and refused to sanitize the Work area, Line Tailorship Equipment, Doors, and be less than Six feet, and to Congregate and go back to the C-Block and A=Blocks of CCF, and Spread the virus.

96.) CorCraft, also, refused to Provide CCF with a bottle of disinfected, recommended by (WHO) when they aware that CCF, did not have any, and fact the disinfectant would be affective in Combating the Spread of Covid 19.     (96) [page 35]

97.) Defendant(s) Bell and Annucci, refussed to provide any mental health travama counseling for plaintiff(s) who tosted positive or was exposed to Covid-19, or had a death from a relative to the demise of Covid-19.

98.) Plaintiff(s) who were infected with virus, Currently suffer from depression, humiliation, anxiety, low self esteem, no cognitive thinking, no taste buds, impaired vision, sense of smell Gilteration. Constant headeches, nausation, diaherra, no appetitte, drastic weight loss of over 40 pounds. The mental Gnugist still exist, the mere mention of Covid-19, Causes Post Travamtic stress, and Plaintiff(s) may potential be mentally impaired. (see Exhibit D).

99.) The Plaintiff(s) who have Allegenies, high blood, as underlying health conditions are now Deranoid, due to the assumption that there allegenies or rise of blood Pressure is Covid 19, and that they are going to die, or never taste, smell, or see again.

(Pg. 37)

(27)

(100.)
Defendant(s) Bell and M. Rushord racially discriminate against Plaintiff(s) in the vaccine distribution. The white elder incarcerated Prisoners, were first in Per Bell.

101.) Plaintiff Burrell wrote Defendant Rushford, about the Distribution on or about January 20, 2021. Plaintiff then subsequently spoke to Rushford, latter in the week, and Rushford stated "yeah, were getting Johnson and Johnson, moderna is expensive, but we have to take care of our own first, you younger blacks, have nothing to worry about, I mean black people already have high blood pressure, and a few of the older Blacks told me they hope to catch covid-19 and die, so they don't have to serve there life sentence, so, hold your horses Burrell, me and Bell is milking this cow." (see Exhibit Ø).

102.) Plaintiff(s) never received a vaccine shot at all or until all the white incarcerated Prisoners and staff received the Covid-19 shot, Plaintiff(s) who did not receive the shot during that gap of time, was infected with covid, and suffered physical dihisary infected with covid, and suffered physical dihisary Fever, no taste, weak, no appetite, weight loss of over 40 Pounds, and mental health injury of Post Traumatic Stress. (38) (30. 38)

103.) There was no sanitizer provided to Plaintiff(s) housing unit, facility bathrooms, or Program area's. There are no sterilized wipes or clothes for Plaintiff(s) to wipe the shared facility areas down to Prevent the infection. (See Exhibit (H))

104.) Items are being Passed through the Commissiary, Package room, and none of the Defendant(s) Tucker, Rivers, Portious, Cavarbury, Martin, Cook, McDonald, Sgt mason, & Lt. Durkin T. Lashway Gloves or effective PPE. The Covid-19 test are wearing were being administered, and the Staff used the Same set of gloves, touching Plaintiff(s) Chin one after the other.

105.) Defe Bell, and defendant(s), took no minimal measures in Social distancing, which are not effective at Preventing the spreading of Covid-19. Bell and Defendant(s) Tucker, Rivers, Portious, Cavarbury, Martin, McDonald, Cook, T. Lashway, Sgt. Mason & Lt. Durkin Ordered Plaintiff(s) to sit one seat away from each other in the Chow hall, less than Six (6) feet away from another Prisoner, both Plaintiff and Prisoner removes the PPE to eat, the other Prisoner Sneezes, and Coughs next to the Plaintiff(s) Causing infection and exposure of Covid-19. Plaintiff(s) lost at minimum 15 Pounds, being unable to eat, due to the unsanitary conditions, the Trays were dirty, as well the spoons which were used and unwashed,

(Page 39)
(29) Plaintiff(s) were forced to drink Water, bread, tissue, butter, and, if Plaintiff(s) may receive a Package Exhibit (39) if Bell allowed it

(06a)

E. Bell and Defendant(s)

allows Prisoner to roam CCF. in groups of parallel lines, and Prisoners are inches away from each other, wearing no PPE. Bell and Defendant(s) Tucko, Rivers, Leshway, Posthous, mesora 1&, Cook, martin, sgt. mesora, & Lt. Burkin.

Order Plaintiff(s) to take covid 1a test, and sit next to another Prisoner, in a holding Pen with 40 other Prisoner(s) in a 8 x 20 area, less than Six(6) feet apart, PPE removed. Watching television in this holding pen Conversing, spreading the virus. This is a requirement to be tested for covid-19 due to the Defendants negligence.

157.) The Plaintiff(s) hide in the bathroom while at the hospital to avoid Contracting the virus. The only social distancing measure demonstrated by Bell is to Protect the Civilian Staff, the school building, vocational, areas where Civilian staff is located, is where a social distancing and PPE mandate is held. (See Exhibit  ). Defendant(s) Bell, Bradford, Zerniak, Leclair, Rushford, Langlais, Matott, and King Created Policies, that were defied, CDC, & Scott Kelly Docs Pandemic Covid-19 Protocol, Causing the surge of infection in CCF.

(30)    (Page 40)

(110.)

(oct.) The CDC ordered to CCF; E. Bell, Annucci, and Defendant(s) McLeary, Finn, Cook, Lavancey, Martin, Tucker, Peters, Wilson, Whitehurst, J. Leshway, Cook, McDonald Sgt Mosey & Lt. Durkin

to provide enhanced cleaning or any type of disinfecting, or hygienic practices. Bell has a Program called Porter (eg. Janitorial Curriculum) to the CCF, and there are Porter stations where a Prisoner is stationed to provide janitorial service. These Porters aren't required to wear a mask (see Exhibit Q).

(oct.) 111.) During the outbreak and after Bell, Some Demars (Defendants) retrained the Porters how to clean housing units, but never provided tutorial to plaintiff(s). Bell & Demars ordered these Porters as Previously stated to "use a minimal amount of water," exposing Plaintiff(s) to the virus and disregarding the CDC guidelines. (See Exhibit L & M).

112.) E. Bell, never Provided Plaintiff with any Cleaning or hygiene Practices. Plaintiff(s) were Provided the standard Cleaning Practice, (Pre-Pandemic), "once a week Saturday or Sunday Cell clean up Day" (see Exhibit D), Plaintiff was given a toilet brush, a mop, Spray bottle Filled with a Window Cleaner. This is the standard Practice, the CDC ordered and Annucci Docs Bell to adopt "Enhanced Cleaning" and to revise the existing Flu-Protocols. (see Exhibits A & B)

(Page 42)

(32)

108.) This was acknowledged by Bell, and Defendant(s) Tucker, Rivers, Porthous, F. Lashway, Martin, McDonald, Lashway, Sgt moson & Lt. Durkin

Plaintiff(s) cleaned there toliet bowls, and mops his cell floor with a minimal amount of water, and window cleaner as the disinfecting agent, which isn't effictive in combating the virus. E. Bell, or Demars, or Annucci, never trained Plaintiff(s) on how to properly clean and disinfects nor was Plaintiff provided cleaning and disinfectant from Defendant (Cor Craft), or any effective cleaning solution.

109.)    E. Bell, Defendant(s) Tucker, Rivers, Porthous, Lashway, Martin, Cooly, Porthous, McDermod, Sgt.meson & Lt. Durkin

are not sanitizing any of the shered facility Plaintiff(s) utilize and frequent with infected staff and inmates. Hand Ritilings in the skirwells are not sanitize, the eating chow hall is a super spreader area is not sanitize to Docc's or CIV staders. Bell and Defendent(s) placed hand sanitizer me shall, yard door, where there is over three offices, a Sgt. and Lt, who screams at Plaintiff(s) for using the dispenser yelling "That's for staff only", blocks, one dispenser in the officer station, and in the infirmary attached to the officer stations. These handsanitizers, were strategically placed for CCF, not plaintiffs, for plaintiff(s) attempted to use them CCF staff yelled "This is for staff", and were placed on CCF staff station, so it can be assumed,

(31) (Page 41)

(113.)

(113.) The visit rooms, were not thoroughly cleaned, the surfaces that Plaintiff(s) and Civilian interacted on. Defendant(s) Bell, created a shower schedule and the shower in CCF, is located in the bathouse of CCF., the bath house consist of approximately

(40) forthy Shower heads.

(114.) (114.) Defendant Bell, Policy was A, block, 15 block, C Block B D. Bbock non wed fri, B Lt, Lft, Lt and oft Tues-Thurs-Sat - make up Day/., and the plaintiff(s) who were ordered to work in the Tailor shop to manufacture PPE for Defendant (or craft to sell general public, showered upon returning from work. (see Exhibit N)

(115.) (115.) Plaintiff(s) from the Tailorshop, Contract the virus, and was never checked for a temperature or symptoms, returning from work and entering the bathouse, the Shower heads are less than 2 two feet apart, and none of the plaintiff(s) are allowed to wear PPE or any type of covering of the head area in the Bathouse. This caused the virus to spread, (see Exhibit N.)

(116.) (116.) The policy to have Plaintiff(s) shower after each other, and not clean and sanitize the area, was a clearless disregard of Plaintiff(s) safety and Protection from Covid. There is roughly 300 Prisoers in each block, thats at least 800 prisoners utilizing the showers on these schedule dates, there was never a requirement to clean and sanitize the showers.

(33)      (Page 43)

117.) The shower(s) were Freezing Cold, from April 2020 March 2020 and beyond June 03, 2022, Plaintiff(s) received no hot water in CCF. (See Exhibit F.) This shower schedule was disapproved by Plaintiff(s) who filed grievances, to shower within there Cell blocks. Every Company holds 42 Prisoners in UF; UH; blocks, C-Block 32; D-block 42 Cell; B-Block 25; A-Block 25-Cells, approximately. There is two showers on each of these Companies.

118.) Plaintiff(s) proposed that a ten minute shower on the same days of the week, as Bell outlined in his Policy, in the Blocks, on the company. Giving Plaintiff(s) the Social distancing, and enhanced Cleaning of the shower itself. The shower holds a Soap dish area, that Prisoners places Wash rags, and other bodily transmitted fluid items that could and did cause the spread the Covid-19. (See Exhibit BB & BX

119.) Defendant Bell, denied Plaintiff(s) Grievance, (see Exhibit GR) he Chosed to allow defendant(s) Tucker, Rivers, Porthous, Lavaway, martin, Cook, mcDonald, Cashway, Sgt mason & mcDonalds & Lt. Durkin influence him to deny the socially distant and enhanced Cleaning method ordered by CDC and Defendant Kelly, to appease defendant(s)

(page 44) who Protested, because "it was to much work on the company officer"
34) Defendant Kelly denial of training, and Supervision of Bell caused this Policy to exist outside of his area of law Plan.

(120.)

120.(120.) As of March 17, 2021, with the racial discrimination of the Covid-19 Vaccine rollout, by Defendants Bell, Harrigan and Rushford, Caused a Surge of Covid-19 infections at CCF. (See Exhibit 5)

(121.)

121.(121.) The rate of Covid-19 infection at CCF, was twice times of that of the United States of New York State general Population. There was one Covid-19 Death of Plaintiff John Doe, who died due to the Defendants failure to Protect him.. (See Exhibit 5)

122.)(122.) The Death rate for Plaintiff(s) was 0.05% 1/3 of the death rate for the general Population. The Attorney General Assistant Alex Francis Michaels found these "figures impressive when one considers that the death rate at CCF among those inmates who have become infected with Covid-19 then is 0.27%"

123.) (123.) Clinton infection rate maintained between 15% and 18%, this Facility was the highest infected area in the United States due to these defendant(s) refusal to adhere CDC Guidelines, Provide training and Supervision to ensure Safety of Plaintiff(s). (See Exhibit 5)

(page 45)                    (35) Pg. 4.

(124.) Defendant Bell, ultimately resigned from DOCCS, (as Superintendent) and Defendant McIntosh inherited the virus contaminated CCF; on or about July 16, 2022. Defendant McIntosh did not adopt any of the required Safety, Cleaning Policies.

125.) Plaintiff(s) housed in D-Block, did not receive Cleaning Supplies at all, the Food Service Administrator John Doe Defendant, maintained his negligence in Cleaning the food trays, Cups and spoons, so Plaintiff(s) Suffering worst.

126.) The Defendant(s) Rushford Continued with the scheme him and Bell devised to Cause an post or overtime for C.O.'s. This was done in D-Block and Lower-F. These were quarantine units, where Plaintiff(s), were in a Cell that toilet did not work, or Sink, no Cleaning Supplies, the Sheets were Pre-existing, and soiled with fluid, Plaintiff(s) here not allowed Commissary, Packages, Showers, Phone or recreation or visit(s). Plaintiff(s) here never Showing Symptoms, this was just done, arbitrary and Capricously,

127.) The Defendant(s) wished, and whichever C.O. from the Blocks wanted to Cause Plaintiff(s) atypical and Significant hardship, for Plaintiff(s) and overtime for themselves Contracted medical, and whichever Plaintiff they

(26.) Selected then him, and a 6ft radios of him was transferred (see Exhibit) to either D-Block or Lower-F Quarantine

128.) Defendant(s) Mc Intosh, and Defendant
Bell, refused to Provide General Population
Plaintiff(s) with the Privilege of utilizing
the telecommunication (Phone) for a Safer,
Socially distant, disinfected, and almost
Covid-19 free environment. (See Exhibit (O) (O9 T)

129.) Defendant(s), only allowed Plaintiff(s)
in the Special Housing Unit, unit 14, of CCF,,
with JPAy FIVE and Securus Contracted
Commodities (Tablets), which allowed these
Plaintiff(s) in the SHU to make Outgoing
Phone calls, utilizing the Wi-Fi System
to make cell calls, they Pressing a
application whose insignia, and their dialing
or a touch screen key Pad. These Tablet, can
be clear, and sterilized, and Plaintiff(s)
Use headphones, with a microPhone, to
speak to the receiver of the call.
130.) DELD These Plaintiff(s) were also, afforded
the Safer, and Socially distant Caw library access
to the Courts. The JPAy Company afforded these
SHU Prisoners with Law library tablets also.

(37) (pg.48)

131.)
(129.) Defendant(s) McIntosh and Bell, was advised to provide the Expandable utterings of the Tablets by Defendant Kelly, and the CDC, but they refused, the only way Plaintiff(s) had access to these safer alternatives, was by a disciplinary sanction that deemed them a security threat to CCF population. (see Exhibit(s) A & B)

132.) (130.) On or about March 23, 2022, Defendant McIntosh, and KASCO LLC, Conducted an asbestos abatement in unit 14 SHU or CCF., Plaintiff(s) Burrell was housed there two Company seventeen cell. Plaintiff Burrell notice clouds of smoke in the back of his cell, and other Plaintiff(s) coughing loudly, one particular Joe Darrell was screaming his blood pressure was high. (see Exhibit #3 & U)

133.) (131.) Plaintiff Burrell was brought to medical at or about 9:30 am from unit #4, claimant was escorted by Defendant(s) Sgt. memillion and Co. Varin, Plaintiff was brought down a flight of stairs and told to wait on the landing, "Plaintiff was engulfed in a dark cloud of smoke emitting from the elevator, that men (two) wearing KASCO LLC were throwing cotton like Pallets by Plaintiffs feet causing more smoke. On the return back from the medical exam and into unit 14, Plaintiff had to wait 40 minutes again in this smoke, and the whole entire unit 14 was engulfed in smoke.

(38) (Pg. 49)

134.)

~~(ushi)~~Defendant McIntosh, Allowed Defendant(s) music walk around and enter the facility with no masks. Plaintiff Burrell was housed in unit 14 3 Company 27, on or about November of 2021.

135.) ~~(123)~~ Defendant Music, was serving Chow to Plaintiff, and when Plaintiff stretched his hand out to retrieve the tray, Defendant music grabbed plaintiff ~~clear~~ forearm(left) and leaned into plaintiff face, and Sneezed on him. Plaintiff grabbed the tray, and yelled " where is your mask?" Music responded, "Oh Rushford Said you did not get vaccinated you were about of that group who was Scared of the Johnson and Johnson vaccine, So, I gave you an early Christmas present Covid-19 Set well". (Set Exhibit ▨▨▨) X

136.) ~~(123)~~ Plaintiff, awoke the next day and Awoke in a Cold Sweat, Plaintiff defecated on himself, and threw up on his family Photo's, Plaintiff, was admitted to the infirmary, and was informed by Defendant Rushford he had Covid-19. Plaintiff requested a vaccine Shot

(39) Rushford denied it Stating " I told you once all my people are vaccinated the you'll set one" .

137.) Plaintiff(s) who contracted the Covid-19 virus during March 2020 - February 2023 suffered and was infected by the Defendant(s) refusal to provide safety precautions and preventabile measures to stop the spread of infections.

138.) The Defendant(s) caused plaintiff(s) atypical and significant hardship, for this time, with cold showers, dirty and unsanitary eating utensils and environment, unlawful quarantine, denial of disinfectants, no tutorial of Covid-19 or how to combat it, no alternatives of communications,

139a) Plaintiff(s) lost over Forty (40) Pounds, hair loss, loss of smell taste, vision, property damage vommitting on personal property in cell, and defecating or themselves, plaintiff(s) suffer mental anguish, and post Traumatic Stress, from the near death experience of Covid-19.

140.) Plaintiff(s) Cognitive thinking is impaired, plaintiff(s) can't formulate thoughts as Before the infection of covid 19. Plaintiff(s) speech is impaired and can't communicate as they did prior to infection, plaintiff(s) vision is impaired and can't see as they did prior the Covid-19 infection requiring glasses. As well as mental health therapy, to redeem there self esteem from this tragic conditions of confinement.   (40)  (pg. 51)

(141.) Defendant(S) Annucci, Bell, McIntosh and Kelly, refused to Provide plaintiff(S) with the ".. DOCCS -- negative air flow isolation rooms". The CCF, has no ventaliation system at all. (See Exhibit A)

(142.) The Smoke emitting, was from an asbestose abatement, and the Covid-19 virus was also able to linger airborne with the entire CCF, due to this lack of an essential breathing mechanism to confine 1,900. men into a setting, and Provide no ventaliation, is an abuse of discretion.

143.) Plaintiff(s) who was housed in unit 14 of CCF march 23, 2022, to May 10, 2022, were exposed to asbestos, Defendant McIntosh was aware of this abatement, and were required to evacuate the unit 14 SHU which housed approximately 50 Prisoners. She refused to do so, and allow the asbestos abate, causing plaintiff(S) (Burrell) coughing up blood, vomitting, dizziness, visual impirment, loss of appetite, hair loss, weight loss over 40 pounds, mental and reountional distress.

144.) Plaintiff Burrell, filed a grievance and Defendant McIntosh lied and stated "There was no asbestos abatement being done". (See Exhibit X)

(41) Clearly lying to cover up the injuries she caused.

(45.)

145.) Plaintiff(s) During there course of incarceration, at CCF, and being forced to service by CorCraft, they were exposed to Covid-19, and Asbestos. Plaintiff(s) were not Provided with training or Preventing Contracting the virus, was denied PPE to Combat it, or any Cleaning supplies, not the Chemical CorCraft manufactured, and denied Plaintiff(s) to utilize, while at the tailor Shop manufacturing Surgical masks under the Defendant(s) Bell, Annucci, and CorCraft Orders.

146.) Plaintiff(s), too Suffered from the results of the aptypical and Significant hardship of Conditions of Confinement, they Suffered from, Sinus Problems, bouts of dizziness, Chest Pains, various respiratory and Cardio-Vascular disorders, and an increased risk of developing future respiratory and Cardiac Complications.

147.) These Injuries, Caused mental anguish, depression, Post traumatic Stress, anxiety, low Self-esteem. The failure to Protect plaintiff(s) from air borne virus Covid-19, and air asbestoes abatement, that was forseable and preventable From Injuring Plaintiffs.

(42)( pg. 53)

Exhaustion of Administrative

Remedies

Plaintiff(s) Burrell, Exhauses all of his administrative remedies with all respect(s) to all Claims B all Defendant(s). (See Exhibit(s) A-W).

Plaintiff(s) Burrell realleges and incorporate by reference Paragraph(s) 1-145

Legal Cause(s) of Action

46. The Policies, Procedures, Practices, & acts of Defendant(s) Annucci, Bell, & Kelly alleged in Paragraph(s) 1 - ____ above & the annexed Exhibit(s) violated the right(s) of Plain-tiff(s) & member(s) of the class under the United States & therefore are volative of Title 42, 1983 as follows:

(pg. 54)

147, Plaintiff(s) Burrell during there Course of incarceration, at CCF, & being forced to service by CorCraft, they were exposed to Covid 19, and asbestos. Plaintiff(s) were not Provided with treining or Preventing Contracting the virus, & was denike PPE to combat it, or any Cleaning Supplies, not the Chemical CorCraft manufactured, & denied Plaintiff(s) to utilize, while at the tailor Shop manufacturing Surgical mask under the Defendant(s) Bell, Annucci, & CorCraft order(s)

148. Plaintiff(s) Suffered from the results of their atypical & Significant hardship of Conditions of Confinement, they Suffered from, sinus Problems, bouts of dizziness, Chest Pains, various respiratory. & Cardiovascular disorders, & a increased risk of devoloping future respiratory & Cardic Complications,

149. These injuries, causes mental anguish, depression, Post-Treumatic Stress anxiety, loss Self-esteem, the failure to Protect Plaintiff(s) Burrell from air borne virus Covid-19, & a asbestos abatement that was forseeasle & Preventable from injuring Plaintiff(s)

150. As a result of the policies members of the Class have suffered violation(s) of their rights(s), Privileges, & immunities under the United States Constitution & have Suffered, Severe emotional, Psychological distress, anguish, anxiety, & injury & Pain & Suffering due to the Willful, Wanton & deliberate misconduct of Defendant(s) Annuci, Bell, & Kelly.

(Pg. 55)

15. These Plaintiff(s), Burrell, individuals similarly Situated are all male citizens of the United States of America, who were detained in the custody of CCF,

who were Subjected to atypical & Significant hardships in the Conditions of Confinement in CCF, that Caused them to be exposed, infected & dead from Covid-19, & Suffer mental Physical, injuries, & wrongful death as of & result from the deliberate indifference of Defendant(s) to adopt CDC & DOCCS Covid-19 Pandemic guidelines & Conditions of Confinement to Prevent the spread & infection rate of 18% at CCF as well as the asbestos abatement, that they were forced to inhale in Unit 14.

15a. Because of the intimate & Personal nature of their Complaint, John Does have sued under assumed names. Plaintiff(s) Stand ready to reveal their true identities in such manner & as such time as the Court deems appropriate.

53. Policies, Procedures, Practices & acts of Defendant(s) Annucci, Bell, & Kelly alleges have have Continued unchanged from the on Start of the Covid-19 outbreak, Upon information & belief Defendant(s) Promulgated a written Policy Directive (Exhibit A) which has been not been enforced in a manner consistent with those Policies Procedures, Practices, & acts, else in effect & alleged herein Upon information & belief, defendant(s) Kelly had issue a Policy & Directive that was disregarded, because he failed to train & Supervise the implementation of its success.

(Pg. 56)

154. Defendant(s) Anthony Annucci, Bell, Kelly, Corcraft, were deliberately indifferent to Plaintiff(s) burell risk of being infected with Covid-19, by refusing to allow Plaintiff(s) to be socially distant in the tailor shop, wear PPE, Sanitize tailorshop equipment, be trained on how to wash there hands so given cleaning disinfectant, hand Sanitizer, causing infection of Covid-19, mental, Physical, injuries, p wrongful death. Violated Plaintiff(s)/1st; 8th; 13th; B 14th Amendment Right(s) Pursuant to the U.S. Constitution.

155. Defendant(s) Annucci, Kelly, Corcraft, were deliberately Indifferent to Plaintiff(s) being infected with Covid-19, by enlisting Defendant(s) Corcraft to develop p bottle a 75% ISO Propyl alchol based formula as recommended by the World Health Organization, B not Providing It to Plaintiff(s) training Plaintiff(s) on how to develop, or use this Combative PPE p only Providing this Covid-killer, to Great meadows, Shawangtunk, B Albion C/F, who interstion rates were moderate, these defendant(s) deliberate indifference caused 'CCF; infection rate to double in New York State & the U.S. & caused Infection of Covid-19, mental injuries, Physical, B wrongful death, violates Plaintiff(s) 1st; 8th; & 14th Amendment Right(s) Pursuant to the U.S. Constitution

(pg. 57)

156. Defendant(s) Tucker, McLeary, Rivers, Lavarway, Portious, Wilson, Whitehurst, T. Lashway, Finn, Martin, Cook, McDonald, Sgt Mason, Lt. Durkin, Bell, & McIntosh, refusal to social distance themselves & incarcerated individual(s) Plaintiff(s) Bruel with safer methods of communication(s), visitations, facility movement, medical congregation to be tested, refusal to sanitize phones, kiosk, law library equipment, or provide a ventaliation system, to allow Porter ies to not wear PPE, for mandating PPE to be worn only at programs, to only social distance at programs, to train Port-us to use minimal amount of water when mopping, & refusing to disinfect Plaintiff(s) living quarters with enhanced cleaning, ordered by Defendant Koll & CDC. Violated Plaintiff(s) 1st, 8th, & 14th Amendment Rights. Pursuant to the U.S. Constitution.

157. Defendant(s) Rushford, Harrigan, Tucker, McLeary, Rivers, Lavarway, Portious, Wilson, Whitehurst, T. Lashway, Finn, Martin, Cook, McDonald, Sgt. Mason, Lts Durkin, Bell, McIntosh, devising a plan to Plaintiff(s) be based in quarantine in the hospital, infirmary, D-Block, & LF-Block, benefits to reap over time, as a punitive strategy to ret-aliate against Plaintiff(s). They did not like, & to impose atypical & significant hardship(s) under this fabricated quarantine by not allowing Plaintiff(s) shower(s), working toilet(s), clean sheets, & towel(s), soap, phone, rec, commissary, packages, kiosk, personal property, cleaning supplies, for a minimum of 10 days, re-fusing to check temperatures & releasing Plaintiff(s), Per Scott Kelly, caused Plaintiff(s) to suffer, mental, physical injuries, become infected with covid19, & lose over forty pounds, due to not being able to eat because the cups, utensils, & trays that were dirty. Violated Plaintiff(s) 1st, 8th, & 14th, Amend-ment Rights, Pursuant to the U.S. Constitution.

(Pg. 58)

158. Defendant Bell, Bathhouse Policy was deliberately indifferent to Plaintiff (s) Burnell being infected with Covid-19, suffering Physical & mental injuries, & Wrongful death forcing over 200 plaintiff(s) into a Congregated bathhouse, with only 40 shave heads & not sanitizing them & refusing to Provide the suggested method of block shavers to appease Covid caused Plaintiff(s) Burnell to Contract Covid-19, suffer Physical, metal, injuries & Wrongful death. Violated Plaintiff(s) 1st, 8th & 14th Amendment Rights Pursuant to the U.S. Constitution.

159. Defendant(s) Bell and John Doe, (food service Administrator), was deliberately indifferent to Plaintiff(s) Burnell, being infected with Covid-19, suffering metal, physical, injuries & Wrongful death. By refusing to Provide Plaintiff(s) with sanitize Cups, Spoons, forks, & trays. Causing Plaintiff(s) Burnell to eat bread, butter, tissue, & toothPaste, causing over forty Pounds of weight loss. Violated Plaintiff(s) 1st, 8th: & 14th Amendment Rights Pursuant to the U.S. Constitution.

160. Defendant(s) Bell and Rushford, refusal to Provide African American Plaintiff(s) Burnell with the Covid-19 Vaccine until all the white incarcerated individuals were all vaccinated. Caused Plaintiff(s) to be infected with Covid-19, suffer metal, Physical, injuries & wrongful death, violated Plaintiff(s) 1st, 8th & 14th Amendment Rights, Pursuant to the U.S. Constitution.

161. Defendant(s) Tucker, McCleary, Rivers, Lavaway, Portions, Wilson, Whitehurst, T. Lashway, Finny Martin, Cook, McDonald, Sgt Mason, & Lt. Purkin, filing MBR against Plaintiff(s) for damage to state Property for them creating PPE out of state issued headker Chick(s), & imposing 30 Days keeplock, loss of rec, Packages, Commissary Tablet(s), to Property. violated Plaintiff(s) 1st, 8th, & 14th Amadnat Right(s) Pursuat to the U.S. Constitution.

162. Defedant(s) Annucci, Bell, & Scott failure to train these officers, on the CDC Covid-19 Policies, or Plaintiff(s) right to Create PPE, & not revesing the MBR sanctions & expunging them from Plaintiff(s) disciplinary record. violated Plain Aff(s) 1st, 8th, & 14th Amadnat Right(s) Pursuat to the U.S. Constitution.

163. Defendant(s) Tucker, McCleary, Rivers, Lavanway, Portious, Wilson, Whitehurst, T. Lashway, Finny Martin, Cook, McDonald, Sgt Mason, & Lt. Purkin refusal to allow Plaintiff(s) hand Saritizer, Clearing Supplies, Protest to deny Plaintiff(s) Showers in the block, forcing to go to the tare bathhouse be less then six feet Congregate & utilize unsanitized Soap Holder Caused Plaintiff(s) to be infectee with Covid-19, & suffer metal health & Physical injuries & wrongful death. violated Plaintiff(s) 1st, 5th, 8th, & 14th Amadnat Right(s) Pursuat to the U.S. Constitution.

164. Defendant(s) Kelly, & Annucci, failure to train Bell, Tucker, McCleary, Lavanway, Portias, Wilson, Whitehust, T. Lashway, Finny Martin, Cook, McDonald, Sgt Mason & Lt Purkin, revision of the Flu-Padenic Protocors for Covid 19, As required by CDC & Correction law, Caused them to be deliberately indifferent to Protecting Plaintiff(s) from Contracting Covid-19 & Suffering mental, Physical injuries, & wrongful death. violated Plaintiff(s) 1st, 8th, & 14th Amendment Right(s) Pursuat to the U.S. Constitution.

(Pg. 60)

165.
Defendant(s), Annucci, TPAY, Securus, was deliberately Indifferent, to Plaintiff(s) being infected with Covid-19, mental injuries, & Physical injuries, & wrongful death. Denying Plaintiff(s) ExPuder able offering(s) & Alternative Communication(s) as Directed by the CDC & Scott Kelly. The refusal to Provide tele communication Via an application on the TPAY(S) Tablet, In lieu of Plaintiff(s) going outside of their Cell(s), into the Congregated rec-area, be less than Six feet from each other, with no PPE, or Sanititation of the Phone receiver. Caused Plaintiff(s) to Contract Covic-19, suffer metal & Physical injuries & death. The refusal to Provide video-chat on the Kiosk, as a safer expedable offering as Directed by Kelly & CDC, caused visitors to visit CCF, While NY was the highest Infected area in the country, & causing a super spread of the Covid-19 virus, August-December, of 2020. Causing infection of Covid-19, mental, Physical, injuries & wrongful death. Violated Plaintiff(s) 1st, 8th, & 14th Amendment Right(s) Pursuant to the U.S. Constitution

166. Defendant(s) Annucci, TPAY, SECURUS, meIntosh, Bell, was deliberately indifferent to Plaintiff(s) being infected with Covid-19, & Suffering mental, & Physical injuries. Incenturing Indigent Plaintiff(s) to Utilize Phone(s) weekly, No social distance, NO PPE, No DisInfectant, Caused these Plaintiff(s) to contract & spread Covid-19, and to suffer from mental, Physical injuries, & Wrongful death. The Plaintiff(s) also Utilize the free stamp(s), exiting there Cell(s) to Utilize the Kiosk to Send out email(s), exit there cell(s), Utilize the Kiosk, less than Six feet, not Sanitizing the Kiosk Caused Plaintiff(s) to contract & spread Covid-19 & suffer mental & Physical injuries & death. violated Plaintiff(s), 1st, 8th, & 14th Amendment Right(s) Pursuant to the U.S. Constitution.

(Pg. 61)

(19. 62)

167.) Defendant(s) Bell decision, not to post any tutorial(s) or instruction(s) or hard washing and Covid-19 Precautions in CCF. Caused plaintiff(s) to become infected with

168): Defendents Bell, Mc.Tntohs, and Annucci. Refused to provide telecommunication on the tablet and video currently and law library tablet(s) to plaintiff(s), but allowed them to Shu Plaintiff(s). Caused plaintiff(s) to Utilize congreated and unsanitice Phone, law library eauoitments & become infected with Covid 19 & Suffer mental & Physical injury & Wrongful death violated Plaintiff(s) 1st, 8th, 14th amendments, Right(s) Pursuant to the U.S. Constitvation.

169.) Defendents mcintosh, & Kasco llc, was deliberatily indifferent to plaintiff(s) From unit 14, and into a smoke free air enviroments, Causing the asbestos Abandement evens to enter plaintiff(s) Lungs, causing Physical Mental health injuries violated Plaintiff(s) 1st, 8th & 14th Amendments Pursuant to the US constitvation

170.1 Defendents Bell & Aushford use of the Johnson & Johnson vaccine, after the CDC told them to stop & Declare a cease & cessix, and gave plaintiff(s) who took the shot & Suffer mental and Physical injuries and deny ever, giving Plaintiff(s) the vaccine viblating the 1st, 8th & 14th Amendment
(PJ 51) Pursuant to the U.S. Constitvation

Defendent(s) Kelly, Annucci, Bell, and Meztosh, refusal

171.) to place a ventilator system in CCF, and be aware to covid 19 as an airborn virus they were Deliberately INDifferent to Plaintiff(s) Becoming infected with covid 19 suffering Mental physical injuries and wrongful Death, violated Plaintiff(s) 1st, 8th and 14th Amendment Rights Pursuant to U.S. Constitution.

172) Defendents Bell, Bradford T. Zerniak J. leclair J. Blackson, M.King, M.Rushford, K.langlais, K. Matott, G.King, J. Kowalowski created policy that were deliberately indifferent. (Doccs covid plan) Plaintiff(s) being Infected with Covid 19 and suffering for mental and physical injuries and wrongful death violated Plaintiffs. 8th and 14th Amendent Rights, Pursuant to the US Constitution.

173). Defendent mesic, grabbing Plaintiff Durrell Forearm, and Sneezing on him, Wearing no mask and being aware he had Covid 19 and that plaintiff with Covid-19 violated Plaintiff 8th and 14th amendment Rights) Pursuant to the US Constitution.

174) Defendent(s) langlais, Bell, Annucci, And Scott Kelly, were deliberately indifferent to plaintiff(s) mental health injuries by denying them mental Health services after being infected with Covid-19 and suffering mental and physical injuries, violated plaintiff(s) 1st, 8th & 14th amendment Rights, Pursuant to the U.S. Constitution.

(pg. 63)

Wherefore, plantiff(s) pray that this court
enter a Order;

1) Finding that this Action Should Proceed as
a class action under Rule 23 Federal Rules Civil Practice

2) awarding Damages to each Plaintiff, and Estate
of each Plaintiff, and members(s) of the class and
against the Defendent(s) Jointly and securely
IN the amount of 50 million $50,000,000.00
dollars, as actual damages for emotional and
psychological distress, Severe mental anguish,
anxiety humilation, degradition and Pain And
Suffering of body and mind. A 50 million
(Fifty million) $50,000,000.00 as Punitive damages
for the willful and Wanton misconduct of defendents,
together with such other amount of Special
compensation damages as may be shown to exist
Awarding Plaintiff(s) and the Class their Costs of
the Suit and their Attorneys fees under title 42
USC 1988;

Awarding such other and further Relief that
this court May deem Just, and Proper

Granting the injuction Relief Sought.



(pg 53) (pg. 64)

Dated', June 27 2022

Respectfully Submitted

A. Burell

AKO Burell # 17B2994

Upstate Correctional Facility

309 Bordhill Road, Malone, NY

12953

PG 54    (PG. 65)