UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AKO K. BURRELL, et al.,

                               Plaintiffs,

        v.                                               9:22-CV-0701
                                                 (GTS/ATB)

ANTHONY ANNUCCI, et al.,

                               Defendants.

_____

APPEARANCES:

AKO K. BURRELL
Plaintiff, pro se
17-B-2994
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

GLENN T. SUDDABY
United States District Judge

**DECISION and ORDER**

**I.**    **INTRODUCTION**

       The Clerk has sent to the Court for review a complaint filed by pro se plaintiff Ako K.

Burrell ("plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out

of his confinement in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS") at Clinton Correctional Facility ("Clinton C.F.").  Dkt. No.

1 ("Compl.").  Plaintiff, who is presently incarcerated at Upstate Correctional Facility

("Upstate C.F."), has not paid the filing fee for this action and seeks leave to proceed in

forma pauperis.  Dkt. No. 6 ("IFP Application").  Plaintiff also filed a motion for a preliminary

junction, two motions for counsel, and a motion for class certification.  Dkt. Nos. 3, 4, 9, and

10.

## II.   IFP APPLICATION[1]

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal

court without prepayment of the filing fee that would ordinarily be charged."  *Cash v.*

*Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2]  "Although

an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must

subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from

his inmate accounts."  *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607

F.3d 18, 21 (2d Cir. 2010)).

Upon review of plaintiff's IFP Application, the Court finds that he has demonstrated

sufficient economic need.  *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate

authorization form required in this District.  *See* Dkt. No. 7.  Accordingly, the Court grants

plaintiff's IFP Application.

## III.   SUFFICIENCY OF THE COMPLAINT

### A.  Standard of Review

Having found that plaintiff meets the financial criteria for commencing this action in

forma pauperis, and because plaintiff seeks relief from an officer or employee of a

---

[1]  On July 6, 2022, plaintiff's first IFP Application (Dkt. No. 2) was denied as incomplete and the case was administratively closed.  Dkt. No. 5.  On July 15, 2022, upon receipt of plaintiff's second IFP Application (Dkt. No. 6) and inmate authorization form (Dkt. No. 7), the case was reopened (Dkt. No. 8).

[2]  Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review that plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e).  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[3]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine

---

[3]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**B. Summary of the Complaint**[4]

Plaintiff purports to bring this action on behalf of himself and others similarly situated. In the fifty-four page complaint (with seventy-eight pages of exhibits), plaintiff asserts claims against twenty-seven defendants related to wrongdoing that occurred, if at all, during plaintiff's incarceration at Clinton C.F. *See generally* Compl. The complaint is disjointed and repetitive, and difficult to comprehend. The Court will use its best efforts in an attempt to discern all cognizable claims against individuals/entities identified as defendants.[5] The following facts are set forth as alleged by plaintiff in his complaint.

In March 2020, plaintiff was confined at Clinton C.F. Compl. at ¶ 29. Defendant Deputy Superintendent Scott Kelly ("Kelly"), DOCCS director of special operations and emergency management, issued directives to defendant Superintendent Earl Bell ("Bell") regarding modifications to the corrections environment in an effort to prevent the spread of COVID-19. *Id*. at ¶ 44. The directives were "overly vague" and not tailored for Clinton C.F., a facility populated by 1,500 people each day. *Id*. at ¶ 45. For example, pursuant to the directives, a disinfectant, approved by the World Health Organization ("WHO") and manufactured by defendant Corcraft, would be available only at three correctional facilities, not including Clinton C.F. Compl. at ¶ 47; Dkt. No. 1-1 at 7. Kelly failed to train or supervise

---

[4] The complaint includes exhibits. *See* Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[5] The complaint includes facts and allegations related to individuals who are not identified as defendants herein. As discussed *infra*, claims against individuals or entities not named as defendants are not properly before this Court. *See* Part IV(A)(2), *infra*. As such, the Court will limit the factual recitation to incidents and occurrences involving named defendants.

Clinton C.F. staff with respect to the directives. Compl. at ¶ 45.

From March 2020 until June 2020, inmates were forced to take "freezing, cold" showers.  Compl. at ¶ 117.

From March 2020 until February 2022, defendants failed to adhere to state, federal, and DOCCS directives related to social distancing, personal protective equipment ("PPE"), isolation, visitation, sanitizing, disinfecting protocols, and ventilation.  Compl. at ¶¶ 60, 77-78, 80, 83-8, 90-92, 94-95, 104-107, 110-113; 124,137,141; Dkt. No.1-1 at 2-7, 27.

In August 2020, Clinton C.F. experienced a "spike" in COVID-19 cases.  Compl. at ¶ 55.  The high infection rate was triggered by inmates using contaminated phones that were not sterilized, less than six feet apart, and defendants refusal to expand tablet services.  *Id*. at ¶¶ 49, 54-57, 63-74, 79.

On December 14, 2020, Kelly directed Bell to implement COVID-19 asymptomatic surveillance testing.  Compl. at ¶ 61; Dkt. No. 1-1 at 7.  Pursuant to the policy, officials were directed to randomly select individuals from the facility across multiple units.  Dkt. No. 1-1 at 7-8.  Bell refused to adhere to the policy and, instead, implemented a "racial[ly] bias[ed]" policy.  Compl. at ¶ 61. Pursuant to this policy, defendants repeatedly tested the same inmates and transferred them from the general population to quarantine.  *Id*. at ¶ 62.  On one occasion, defendants told plaintiff that he was transferred to quarantine because he filed grievances.  *Id*.  In quarantine, plaintiff was compelled to use trays, cups, and spoons that were not sanitized.  *Id*. Plaintiff remained in quarantine for fourteen days, without symptoms, and was deprived of shower, soap, phones, or food.  Compl. at ¶ 62.

With respect to the administration of the COVID-19 vaccine, Bell and defendant Nurse implemented a policy whereby white and elderly inmates would be vaccinated first.  Compl.

6

at ¶ 100.  On January 20, 2021, plaintiff wrote to Rushford complaining about the distribution of the vaccine.  *Id*. at ¶ 101.  In response to plaintiff's letter, Rushford advised, "we have not been told when we will be receiving the COVID vaccine[...] when it arrives we will administer it to the inmate population."  Dkt. No. 1-1 at 41.  Plaintiff also spoke to Rushford about the vaccine and Rushford responded that the facility would be receiving the Johnson and Johnson vaccine, but "we have to take care of our own first" and "you younger blacks have nothing to worry about[.]"  Compl. at ¶ 101.

In November 2021, plaintiff awoke in a cold sweat, vomited, and defecated himself. Compl. at ¶ 136.  Plaintiff was taken to the infirmary and Rushford informed him that he had COVID-19.  *Id*.  Rushford denied plaintiff's request for the vaccine and stated, "I told you once all my people are vaccinated then you'll get one."  *Id*.

On March 23, 2022, defendant Kasco, LLC ("Kasco") conducted asbestos abatement in Building 14.  Compl. at ¶¶ 132-133; Dkt. No. 1-1 at 63.  Plaintiff noticed clouds of smoke in the back of his cell and heard other inmates coughing loudly.  *Id*.  Plaintiff was transported to the medical unit and was engulfed in a dark cloud of smoke.  *Id*.  Plaintiff observed two men wearing Kasco uniforms "throwing cotton like pellets" causing more smoke.  *Id*.

Construed liberally,[6] the complaint contains the following: (1) Eighth Amendment condition-of-confinement claims; 2) Fourteenth Amendment equal protection claims; and (3)

---

[6]  The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests.  *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a prose plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiffs] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a prose litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

First Amendment retaliation claims.  *See generally* Compl.  Plaintiff seeks monetary damages.  *Id*. at p. 53.

### C.  Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

## IV.    ANALYSIS

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496,501 (2d Cir. 1994).  As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983.  *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").  In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  This is true even for supervisory officials, like defendants Annucci, Kelly, Bell, Zerniak, and McIntosh.  *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for

8

supervisor liability.").  "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' "  *Id*. (quoting *Iqbal*, 556 U.S. at 676).  "Liability based solely [. . .] due to a failure to supervise, without more, constitutes precisely the type of vicarious, respondeat superior liability that *Iqbal* and *Tangreti* eliminate."  *Myers on behalf of Est. of Myers v. Davenport*, No. 1:21-CV-0922 (LEK/CFH), 2022 WL 3017367, at *4 (N.D.N.Y. July 29, 2022) (citation omitted).

### A. Preliminary Issues

#### 1. Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");  *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*,

557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. Mar. 28, 1996).  Actions for damages against a state official in his or her official capacity are essentially actions against the state.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's claims for monetary damages pursuant to section 1983 against defendants in their official capacities (*see* Compl. at 1), are barred by the Eleventh Amendment and are dismissed with prejudice.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (reasoning that a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state.").

### 2. Rule 10

Throughout the complaint, plaintiff refers to various individuals as "defendants", who are not identified in the caption, or list of parties, as defendants.  Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  A party not named in the caption of the complaint is not a party to the action.  *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Accordingly, plaintiff's allegations against any individual who is not named or identified in the complaint or caption, as John Doe or otherwise, are dismissed for failure to state a claim.  *See Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007); *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006) ("Because the John and Jane Does are not listed in the caption of the Complaint, they are not defendants and the court does not consider claims against them.").

### 3.  Claims Against Private Entities

Construing the complaint liberally, plaintiff alleges that JPay failed to provide video-chat on kiosks, Securus failed to expand "tablet offerings", Corcraft manufactured disinfectant that was not available at Clinton C.F., and Kasco negligently exposed plaintiff to asbestos.  *See* Compl. at ¶¶ 54, 56, 79.

Section 1983 requires "that the alleged deprivation [be] committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "A defendant acts under color of state law when he exercises 'some right or privilege created by the State ... or by a person for whom the State is responsible,' and is 'a person who may fairly be said to be a state actor.' "  *Nicholson v. Lenczewski*, 356 F.Supp.2d 157, 162 (D. Conn. 2005) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922,937 (1982)).

JPay, Securus, Corcraft, and Kasco are not state agencies, but private corporations that allegedly contracted with DOCCS.  Compl. at ¶¶ 9, 10, 11, 28.  Courts have held that contracting with a prison to provide telephone and Wi-Fi services does not transform a private company into a state actor.  *Smith v. N.Y.C. Dep't of Corr.*, No. 18-CV-7018, 2019 WL 2473524, at *3 (S.D.N.Y. June 13, 2019) (collecting cases), *report and recommendation*

11

adopted sub nom., *Smith v. Warden of N. Infirmary Command*, 2019 WL 2866729 (S.D.N.Y. July 3, 2019); *see also Stevens v. Cuomo*, No. 9:21-CV-0306 (GLS/ML), 2021 WL 3165364, at *3 (N.D.N.Y. July 27, 2021) (dismissing claim against Securus related to Wi-Fi services at Clinton C.F.), *appeal dismissed*, No. 21-2093, 2022 WL 3703317 (2d Cir. Feb. 28, 2022). Moreover, plaintiff has not plead facts that would allow this Court to infer that Corcraft, a manufacturer, and Kasco, an asbestos removal company, can be sued under section 1983. *Singleton v. Dep't of Correction*, No. 21-CV-2919, 2021 WL 2665738, at *2 (S.D.N.Y. June 28, 2021); *see also Jackson, Jr. v. Monterey Cnty. Jail*, No. C07-1202, 2008 WL 269472, at *3 (N.D. Cal. Jan. 29, 2008) (dismissing claims against asbestos removal company that performed services at county jail), *aff'd sub nom. Jackson v. Monterey Cnty. Jail*, 407 Fed. App'x 119 (9th Cir. 2010).

Even if the Court were to assume, for purposes of this Decision and Order, that JPay, Securus, Corcraft, and Kasco were state actors, the complaint does not suggest that JPay, Securus, Corcraft, and Kasco had any decision-making authority with respect to the tablet systems, distribution of disinfectant, or asbestos removal. *See Stevens*, 2022 WL 3703317, at *4 (finding that Securus lacked the authority, during the COVID-19 pandemic, to direct its employees to enter Clinton C.F. to "expand spacing between outdoor telephones, or grant inmates expanded access to the Wi-Fi network within the facility").

Accordingly, plaintiff's Section 1983 claims against defendant JPay, Securus, Corcraft, and Kasco are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted.

**B. Eighth Amendment**

12

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468,480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id.* (citation omitted). Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to "basic human needs-e.g., food, clothing, shelter, medical care, and reasonable safety." *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, *inter alia, Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125.

### 1.  COVID-19

Plaintiff claims that defendants violated his Eighth Amendment rights by failing to prevent the spread of COVID-19. With regard to the objective element, courts have found

that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chunn v. Edge,* 465 F.Supp.3d 168, 200-01 (E.D.N.Y. 2020) (citing cases).

Turning to the subjective prong of the Eighth Amendment analysis, this District has previously held, with respect to prisoner claims involving COVID-19, the allegation that defendants disregarded public policy, the violation of a state rule, regulation, or statute does not, on its own, give rise to a constitutional claim. *Morgan v. Parmiter*, No. 9:22-CV-0147 (BKS/CFH), 2022 WL 913188, at *3 (N.D.N.Y. Mar. 29, 2022) (citation omitted); *Smith v. Miller*, No. 9:20-CV-1435 (GTS/CFH), 2021 WL 6503602, at *12 (N.D.N.Y. Nov. 18, 2021) (reasoning that violations of state mandated social distancing requirements does not give rise to a constitutional claim) (citation omitted), *report and recommendation adopted*, 2022 WL 160312 (N.D.N.Y. Jan. 18, 2022). Rather, to establish an Eighth Amendment claim, plaintiff must allege that defendants failed to implement state, federal, and DOCCS guidelines "knowingly and disregarding an excessive risk" to plaintiff's health or safety. Negligence in the implementation of "complex guidelines during a novel crisis" does not constitute deliberate indifference. *See Chunn*, 465 F.Supp.3d at 204; *see Morgan*, 2022 WL 913188, at *3-4 (holding that, even assuming the defendants' response to COVID-19 was imperfect, or negligent, it is not enough to support a finding of deliberate indifference); *see Harper v. Cuomo*, No. 9:21-CV-0019 (LEK/ML), 2021 WL 1821362, at *11 (N.D.N.Y. Mar. 1, 2021) (finding that, while the defendants "made negligent errors in implementing complex guidelines during a novel crisis," they did not knowingly disregard an excessive risk of serious harm), *report and recommendation adopted*, 2021 WL 1540483 (N.D.N.Y. Apr. 20,

14

2021).

Here, the allegations in the complaint fall far short of suggesting that defendants acted with deliberate indifference with respect to plaintiff's risk of harm.  The complaint lacks any specific facts regarding instances when defendants failed to adhere to protocols, but rather, contains sweeping general accusations that defendants failed to follow regulations without dates, times, and places.  *See Irizarry v. Manhattan Corr. Ctr*., No. 21-CV-5170, 2022 WL 375360, at *5 (S.D.N.Y. Feb. 8, 2022) (finding that the plaintiff's vague allegations that proper COVID procedures were not followed insufficient to allege that any defendant acted with subjective deliberate indifference); *see also McFadden v. Morley*, No. 20-CV-06934, 2022 WL 268823, at *13 (W.D.N.Y. Jan. 28, 2022) ("[s]imply alleging that supervisors did not require their staffs to enforce protocols, like mask wearing, unless their supervisors were 'touring the unit,' [. . .] does not plausibly allege that [the d]efendants [. . . ] acted recklessly despite knowing the risk of exposure to the virus") (citations omitted).  Moreover, plaintiff repeatedly alleges that "defendants" disregarded protocols without specifying that any particular individual acted with deliberate indifference.  *See Lawson v. Ruskin*, No. 08-CV-321, 2008 WL 1902218, at *2 (E.D.N.Y. Apr. 25, 2008) (explaining that "lumping all Defendants [. . .] together without specifying what actions were taken, and by whom, to violate his rights" was insufficient to meet pleading requirements) (citation omitted); *see also Robinson v. Balanetre*, No. 21-CV-02071, 2022 WL 1173365, at *6 (S.D.N.Y. Apr. 20, 2022) (reasoning that the complaint lacked facts related to whether the defendants "individually made any meaningful efforts to 'forestall or prevent' any implied constitutional violations by unspecified individuals coming to Otisville with COVID-19").  While plaintiff identifies allegedly deficient policies enacted to respond to the COVID-19 pandemic, plaintiff has not

15

alleged that any defendant had any subjective knowledge that these policies posed a risk of harm to plaintiff. *Lee v. Cook*, No. 3:21-CV-399, 2021 WL 3055403, at *4 (D. Conn. July 20, 2021). Simply put, the facts do not suggest that any defendant acted deliberately or recklessly. *See James v. Annucci*, 6:20-CV-6952, 2021 WL 3367530, at * 8 (W.D.N.Y. Aug. 3, 2021) (dismissing the plaintiff's Eighth Amendment claim against Annucci and the superintendent of the correctional facility alleging their failure to adequately protect plaintiff from the risk of exposure to COVID-19 because there were no allegations of the defendants' personal involvement in the failure to ensure safety protocols were being followed).

As noted *supra*, although the complaint is fifty-four pages in length, the only specific facts pertaining to Burrell are related to an incident in November 2021 involving an individual identified as "Mesic" and Rushford. These allegations however, are insufficient to sustain an Eighth Amendment claim. Plaintiff claims that Mesic entered the facility without a mask and "sneezed on him" while serving a meal. Compl. at ¶¶ 134-135. Plaintiff asked Mesic why he was not wearing a mask and Mesic responded, "Rushford said you did not get vaccinated" because "you were scared of the Johnson and Johnson vaccine" so "I gave you an early Christmas present." *Id*. First, the Court points out that Mesic is not named or identified as a defendant in the caption of the complaint or list of parties. As noted *supra*, the Court will not consider claims against individuals not named as defendants. Moreover, while plaintiff claims that Rushford denied his request for a COVID-19 vaccine, the fact that Burrell did not receive the vaccine when requested, does not, without more, suggest that Rushford consciously disregarded the risk posed by COVID-19. *See Brown v. Clark*, No. 3:22-CV-21, 2022 WL 3355805, at *3 (W.D. Ky. Aug. 12, 2022) ("No decision, as far is this Court is

16

aware, has held that a prison or official was deliberately indifferent by not providing a vaccine when one was requested. No provision of the Constitution expressly confers a general right to be vaccinated[.]") (citing *inter alia Grissom v. Rohling*, 431 Fed. App'x 693, 696 (10th Cir. 2011) (denying an inmate a vaccine available to other inmates does not alone constitute an Eighth Amendment violation)); *see also Gayle v. Meade*, No. 20-21553, 2021 WL 1397128, at *2 (S.D. Fla. Apr. 7, 2021) ("The risk of not getting vaccinated as promptly as one wishes is a risk that society tolerates because demand far exceeds supply") (internal quotation marks and citation omitted), *report and recommendation adopted*, 2021 WL 1377872 (S.D. Fla. Apr. 11, 2021).

Based on the foregoing, plaintiff's Eighth Amendment claims related to COVID-19 are dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e) and § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Asbestos

"The Second Circuit has held that a prisoner who 'claims that he was exposed to friable asbestos while incarcerated . . . and [that] defendants knowingly failed to protect him from such exposure' states an Eighth Amendment claim." *Johnakin v. NYC Dep't of Corr.*, 2013 WL 5519998, at *17 (E.D.N.Y. Sept. 30, 2013) (citing *LaBounty v. Coughlin*, 137 F.3d 68, 72 (2d Cir. 1998)). However, "not just any level of exposure to hazardous materials is sufficient to give rise to an Eighth Amendment claim. [District] courts have held that an inmate must be exposed to an 'unreasonably high concentration of air-borne asbestos particles' in order to state a cognizable claim under the Eighth Amendment." *Id.* (citations omitted). Moreover, pursuant to the PLRA, a plaintiff must allege physical injury arising from

asbestos exposure to state a claim for money damages. *Id*.

Here, even assuming the facts satisfy the objective component of an Eighth Amendment claim, plaintiff seeks only monetary damages.  In this regard, the complaint lacks facts which would allow this Court to conclude that plaintiff developed a physical injury or condition as a result of exposure to asbestos.  Indeed, according to documents annexed to the complaint, plaintiff was seen at sick call and emergency sick calls "several times" between March 22, 2022 and March 31, 2022 and his "exams were normal."   Dkt. No. 1-1 at 69.  Plaintiff's conclusory allegations of exposure, without more, do not support a viable Eighth Amendment claim.  *See Walker v. LaValley*, No. 9:12-CV-807 (TJM/CFH), 2014 WL 4744735, at *18 (N.D.N.Y. Sept. 23, 2014) (finding nothing in the record to indicate that the plaintiff was exposed to, and suffered an injury from, friable asbestos from Clinton's asbestos abatement project).

Based on the foregoing, plaintiff's Eighth Amendment claims related to asbestos are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e) and § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Cold Showers

Plaintiff claims that, from March 2020 until June 2020, inmates were forced to take "freezing, cold" showers.  Compl. at ¶ 117.  Even assuming plaintiff's allegations are sufficient to satisfy the objective prong of the Eighth Amendment analysis, the complaint lacks facts establishing which correctional officers were responsible or personally involved in the alleged unconstitutional conditions.  Plaintiff has not plead any facts against the named defendants related to the showers and thus, has failed to sufficiently allege that any

18

defendant acted with a deliberate state of mind.  Consequently, plaintiff's Eighth Amendment claims related to showers are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim. *See Gomez v. Sepiol*, No. 11-CV-1017, 2014 WL 1575872, at *9 (W.D.N.Y. April 11, 2014) (dismissing the plaintiff's conditions of confinement claim without prejudice to the filing of an amended complaint against the officers that the plaintiff claimed turned off his cold water and deprived him of his basic human needs); *see also Toliver v. Dep't of Corrs*., No. 10 Civ. 6298, 2012 WL 4510635, at *9 (S.D.N.Y. Apr. 10, 2012) (dismissing the deliberate indifference claim for failure to plead facts identifying a responsible official who acted with a sufficiently culpable state of mind).

## C.  Fourteenth Amendment - Equal Protection

The Equal Protection Clause requires that the government treat all similarly situated people alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).  In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment.

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Here, plaintiff alleges that Rushford violated his equal protection rights and discriminated against plaintiff when she refused to vaccinate inmates until all "white" and "elderly" inmates had been vaccination.  Compl. at ¶ 160.  The only specific allegation of discrimination is based upon a verbal exchange with Rushford.  However, plaintiff has not plead facts related to when and where this conversation took place.  Moreover, his claims are belied by Rushford's written correspondence, which was annexed as an exhibit to the complaint.  In the correspondence, Rushford advised plaintiff that the facility "had not been told when we will be receiving the COVID vaccine for staff/inmates[.] When it does arrive[,] we will administer it to the inmate population[.]" Dkt. No. 1-1 at 41.  Even assuming Rushford possessed some amount of animus, the complaint lacks any allegations which plausibly suggest either that (1) plaintiff was the only young, black inmate who was denied a vaccination, or (2) other young, black inmates were treated the same way as plaintiff.  In fact, the complaint does not contain any allegations regarding similarly situated inmates.  Indeed, the allegations in the complaint suggest that plaintiff may have been offered, but refused the COVID-19 vaccination due to his concerns regarding the efficacy of the Johnson & Johnson vaccine.  Compl. at ¶¶ 81-82, 135.

Based on the foregoing, there is no basis for the Court to plausibly infer from the allegations in the complaint that defendants refused to vaccinate plaintiff based upon his race.  *See Berkley v. City of New Rochelle*, No. 21-CV-578, 2022 WL 784018, at *11 (S.D.N.Y. Mar. 15, 2022) (concluding that "threadbare allegations that other detainees were provided with face masks, with no detail as to any similarities between [the [p]laintiff and the

other detainees beyond the fact that all were detained by [New Rochelle Police Department],

are insufficient to state a 'class of one' or selective enforcement equal protection claim."); *see*

*also Thomas v. Pingotti*, No. 9:17-CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y.

Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief

of discriminatory intent are patently insufficient to plead a valid claim under the Equal

Protection clause"); *see also Butler v. Bridgehampton Fire Dist*., No. 14-CV-1429, 2015 WL

1396442, at *4-5 (E.D.N.Y. Mar. 25, 2015) (dismissing the plaintiff's equal protection claim

under the selective enforcement and class of one theories because the complaint "only

discusse[d] the harmful actions [the defendants] took with respect to [the] [p]laintiff, but there

[was] no discussion whatsoever of any similarities between [the] [p]laintiff and others"); *Tuitt*

*v. Chase*, No. 9:11-CV-0776 (DNH/TWD), 2014 WL 2927803, at *8 (N.D.N.Y. June 27, 2014)

("While Plaintiff cursorily alleges that he 'suffered adverse treatment f[ro]m other inmates

because he attempted to resolve . . . issues through the use of grievances,' he does not

identify any particular similarly situated individuals who received different treatment.... Such

cursory allegations do not meet the plausibility standard required by *Twombly* and *Iqbal*.").

Even assuming the truth of plaintiff's allegations, "when a prison regulation impinges

on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate

penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987).  In *Jones v. County of*

*Allegheny*, the district court rejected the plaintiff's equal protection claim related to a prison's

response to COVID-19 holding that:

> the Court must defer to the broad discretion of prison authorities
> in their attempt to control the spread of Covid-19 within their
> facility.  That is, even.  Because it is difficult to social distance
> in a correctional setting, the Court cannot second guess where

> authorities move those who test positive, those who refuse to be vaccinated, those who are more vulnerable to serious complications should they contract Covid-19, and those who recover from Covid-19.   That is, the list of relevant considerations for authorities is long and the Court will not disturb that administrative decision-making.

*Jones v. Cnty. of Allegheny*, No. CV 21-1094, 2022 WL 2806779, at *7 (W.D. Pa. June 24, 2022), *report and recommendation adopted*, 2022 WL 2803111 (W.D. Pa. July 18, 2022)

Accordingly, plaintiff's Fourteenth Amendment equal protection claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted.

### D.  First Amendment Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff - namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action - in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489,491 (2d Cir. 2001), *overruled on other grounds by*

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

"[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty*, 713 F.2d at 13.  Plaintiff alleges that he filed several grievances while confined at Clinton C.F.  *See* Dkt. No. 1-1 at 21, 27, 29, 31, 35, 39, 45-47, 61, 67, 71, 72, 74-79.  While the filing of grievances is a protected First Amendment right (*see Davis v. Goord*, 320 F.3d 346, 352-353 (2d Cir. 2003), the complaint lacks facts identifying what grievances motivated the alleged retaliatory actions, when the grievances were filed, who the grievances were filed against and, more importantly, how defendants became aware of the grievances.  Accordingly, plaintiff has not plead a viable retaliation claim based upon the filing of "grievances."  *See Davidson v. Talbot*, No. 01-CV-473 (RFT), 2005 WL 928620, at *16 (N.D.N.Y. March 31, 2005) (finding that the plaintiff's allegation that he was attacked for filing grievances failed to allege when the grievances were filed and thus, "th[e] Court had no way of assessing the strength or validity of such claim."); *see Guillory v. Haywood*, No. 13-CV-1564 (MAD/TWD), 2015 WL 268933, at *23 (N.D.N.Y. Jan. 21, 2015) (concluding that the plaintiff failed to allege facts identifying the grievances and lawsuits from which the defendant's awareness could be inferred).

Because the complaint lacks any other facts suggesting plaintiff engaged in any other protected conduct, plaintiff's retaliation claims are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim.

## V.     MOTION FOR PRELIMINARY INJUNCTION

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should

not be granted unless the movant, by a clear showing, carries the burden of persuasion."

*Moore v. Consol. Edison Co. of New York, Inc*., 409 F.3d 506, 510 (2d Cir. 2005) (quoting

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  "[T]his circuit has required a party

seeking a preliminary injunction to show: (a) irreparable harm and (b) either (1) a substantial

likelihood of success on the merits of the claim, or (2) sufficiently serious questions going to

the merits to make them a fair ground for litigation and a balance of hardships tipping

decidedly toward the party requesting the preliminary relief."  *Citigroup Global Mkts., Inc. v.*

*VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010) (internal

quotation marks omitted).  However, when the moving party seeks a "mandatory injunction

that alters the status quo by commanding a positive act," the burden is even higher.  *N.Y.*

*Civil Liberties Union v. N.Y. City Transit Auth*., 684 F.3d 286, 294 (2d Cir. 2011).  Thus, a

mandatory preliminary injunction "should issue only upon a clear showing that the moving

party is entitled to the relief requested, or where extreme or very serious damage will result

from a denial of preliminary relief." *Citigroup Global Mkts*., 598 F.3d at 35 n.4 (internal

quotation marks omitted).  "The district court has wide discretion in determining whether to

grant a preliminary injunction."  *Moore*, 409 F.3d at 511.

"To prevail on a motion for preliminary injunctive relief, the moving party must

establish a relationship between the injury claimed in the motion and the conduct giving rise

to the complaint.  *Levesque v. Clinton County,* No. 10-CV-787 (DNH/DEP), 2012 WL

6948779, at *11 (N.D.N.Y. Dec. 28, 2012) (citing *inter alia Omega World Travel, Inc. v. Trans*

*World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (holding that a preliminary injunction may not

be issued to prevent an injury or harm which was not caused by the wrong claimed in the

underlying action); *see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application were unrelated to claims asserted in the complaint and, thus, plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" him).

Here, plaintiff seeks an order prohibiting defendants from denying plaintiff the "expandable offering(s) of tablets, from JPay and Securus." *See generally*, Dkt. No. 3.  As plaintiff seeks a mandatory injunction, he must meet the higher standard and establish a clear or substantial likelihood of success of show that extreme or very serious damage would result in the absence of the requested relief.  *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).  Construing plaintiff's motion in the light most favorable to him as a pro se litigant, the Court finds that he has failed to substantiate any allegations of irreparable harm with evidence in admissible form.  At this juncture, plaintiff has failed to assert any viable cause of action and all allegations in the complaint have been dismissed.  Moreover, in his motion for injunctive relief, plaintiff fails to provide any specific facts establishing the likelihood of success on the merits or extreme or serious damage.

Additionally, the Court need not reach the merits of plaintiff's motion because plaintiff was transferred out of Clinton C.F.  Since plaintiff is no longer incarcerated in Clinton C.F., the Court must deny his request for injunctive relief.  *See* Fed.R.Civ.P. 65(d)*; cf. Hallett v. New York State Dep't of Corr. Servs*., 109 F.Supp.2d 190, 196 (S.D.N.Y. 2000) (Dismissing, as moot, the plaintiff's requests for injunctive relief "[b]ecause he [was] no longer

incarcerated and under the supervision of any of the named defendants ..."); *Candelaria v. Coughlin*, 787 F.Supp 368, 377-378 (S.D.N.Y.1992) (holding that the motion for preliminary injunction seeking medical treatment was rendered moot due to the plaintiff's transfer to a different facility).

For the foregoing reasons, plaintiff's motion for preliminary injunctive relief is denied.

## VI.    MOTIONS FOR COUNSEL

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel.  *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981).  However, pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an indigent party.  28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to represent any person unable to afford counsel.").[7]  Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. Hendricks v. Coughlin, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v.*

---

[7]  Actual appointment of counsel is contingent upon the availability of pro bona counsel to accept an appointment. "If no [one] agrees to represent the plaintiff, there is nothing more the Court can do." *Rashid v. McGraw*, No. 01CIV10996, 2002 WL 31427349, at *1 n.1 (S.D.N.Y. Oct. 29, 2002).

*Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted).  This is not to say that all, or indeed any, of these factors are controlling in a particular case.  Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe*, No. 93-CV-1449 (TJM) 899 F.Supp. 972, 974 (N.D.N.Y. Oct. 16, 1995) (citing *Hodge*, 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause."[8]  *Cooper v. A. Sargenti Co., Inc*., 877 F.2d 170, 172 (2d Cir. 1989).

In the present case, the Court has found that the complaint is insufficient and that plaintiff must file an amended pleading for this action to proceed. Since plaintiff has failed to establish that his claim is likely to be of substance, the Court denies his motions for appointment of counsel without prejudice.  After the Court has accepted an amended complaint for filing, defendants have responded to the allegations in plaintiff's amended complaint, and the parties have undertaken discovery, plaintiff may choose to file a new motion for appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case.  Plaintiff is advised that any future motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.  *See Terminate Control Corp.*, 28 F.3d at 1341; *Cooper*, 877 F.2d at 172,174.  Thus, plaintiff's motions for the appointment of counsel are denied.

**VII.    MOTION TO CERTIFY CLASS**

---

[8]  The court is authorized only to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Mallard v. United States District Court*, 490 U.S. 296,298 (1989).  Section 1915(e) does not, however, permit a federal court to require an unwilling attorney to represent an indigent litigant in a civil case.  *See Mallard*, 490 U.S. at 298, 309.

In his motion for class certification, plaintiff seeks to represent a class under Federal Rule Civil Practice 23, to be defined as "prisoners [. . .] under atypical and significant hardship at CCF [who were] infected, exposed, or died from COVID-19[.]"  Dkt. No. 4 at 1; Compl. at p. 2.

The standards for determining a motion for class certification are well settled.  "For a court to certify a class under Rule 23(b)(3), it must conclude that the prerequisites to class action status as set forth in Rule 23(a) are met, as well as the standards specific to Rule 23(b)(3) classes." *Weiss v. La Suisse, Societe D 'Assurances Sur La Vie*, 226 F.R.D. 446, 449 (S.D.N.Y. 2005).  With regard to the prerequisites set forth in Fed. R. Civ. P. 23(a), the court must reach the following conclusions: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).  In addition, with regard to the prerequisites set forth in Fed. R. Civ. P. 23(b)(3), the Court must also reach the following conclusions: "(1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b).  Plaintiff has the burden of proving that each of the required elements for class certification under Fed. R. Civ. P. 23 has been satisfied.  *Spagnola v. Chubb Corp*., 06–CV–9960, 2010 WL 46017, at * 11 (S.D.N.Y. Jan. 7, 2010) (citations omitted).

It is well settled that a class action cannot be maintained by a pro se litigant because a non-attorney may not represent anyone other than themself.  *Miller v. Zerillo*, No.

07-CV-1719, 2007 WL 4898361, at *1 (E.D.N.Y. Nov. 2, 2007) (citing cases and recommending denial of class certification without prejudice until an attorney makes an appearance); *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); 28 U.S.C. § 1654.  Since the named plaintiff is not an attorney, the request to have this matter class certified must be denied without prejudice for renewal in the event an attorney appears on plaintiff's behalf.

Even assuming plaintiff had counsel or if the Court appointed counsel, the motion would still be denied at this point.  Plaintiff has not established "commonality and typicality" but rather, seeks to certify a class that is "too diverse."  *See Phillips-Addis v. Bush*, No. 1:21-CV-248, 2021 WL 2439264, at *5 (W.D. Mich. June 15, 2021) (reasoning that "although the claims are couched in the same general language— failure to competently manage the COVID-19 pandemic—they necessarily are based upon different facts and generally implicate the actions of different officials.").  The motion lacks any facts related to the alleged injuries or harm suffered by members of the proposed class or facts related to when or where they contracted COVID-19.  *See Thakker v. Doll*, 336 F.R.D. 408, 420 (M.D. Pa. 2020) (denying motion to certify class of detainees, who sought release from detention during COVID-19 pandemic due to a lack of factual similarity).  Indeed, while plaintiff seeks to include all inmates who were exposed to COVID-19, he does not claim that all proposed members contracted COVID-19.  Thus, plaintiff has failed to establish that the proposed class suffered an injury common to all members.  *Molina v. Pennsylvania Dep't of Corr*., No. 4:21-CV-00038, 2021 WL 4450016, at *3 (M.D. Pa. June 8, 2021) (reasoning that the range of injuries suffered by all inmates housed at the facility was too varied), *report and*

*recommendation adopted sub nom*. 2021 WL 4439486 (M.D. Pa. Sept. 28, 2021).

Moreover, plaintiff seeks monetary damages.  *See* Compl. at p. 53.  Thus, because plaintiff's "primary request for relief" is not injunctive, he has not established that the relief would "provide a remedy for claims asserts by all of the proposed class[.]"  *See Phillips-Addis*, 2021 WL 2439264, at *5 (denying certification where the plaintiff sought monetary relief for members of a proposed class that included inmates subjected to the allegedly inadequate precautions taken to protect inmates from COVID-19).

Without any facts to establish "numerosity, commonality, typicality, and adequacy," the Court cannot assess whether certification is appropriate.  *See Justice v. King*, No. 08-CV-6417, 2015 WL 1433303, at *8 (W.D.N.Y. Mar. 27, 2015) (denying motion to certify due to the plaintiff's "failure to do little more than offer speculation about the numerosity of the purported class").  Accordingly, plaintiff's motion to certify a class is denied.

## VIII.   CONCLUSION

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 6) is **GRANTED**;[9] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's Inmate Authorization, and notify the official that this action has been filed and that plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's Inmate Authorization

---

[9]  Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket and terminate "similarly situated plaintiffs" as plaintiffs in this action; and it is further

**ORDERED** that plaintiff's § 1983 claims for monetary damages against defendants, in their official capacity, are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that if plaintiff wishes to proceed with this action, he must file an amended complaint as set forth above **within thirty (30) days** from the date of the filing of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order.  In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that plaintiff's motion for a preliminary injunction (Dkt. No. 3) is **DENIED**; and it is further

**ORDERED** that plaintiff's motions for counsel (Dkt. Nos. 9 and 10) are **DENIED**; and it is further

**ORDERED** that plaintiff's motion for class certification (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff, together with a copy of the complaint.

Dated: September 30, 2022
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge